626 So.2d 198 (1993)
In re RULE OF CRIMINAL PROCEDURE 3.851 (COLLATERAL RELIEF AFTER DEATH SENTENCE HAS BEEN IMPOSED) and Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence).
No. 82322.
Supreme Court of Florida.
October 21, 1993.
PER CURIAM.
To assure that death penalty proceedings proceed in a more orderly manner, this Court, on its own motion, adopts a new Florida Rule of Criminal Procedure 3.851 and modifies Florida Rule of Criminal Procedure 3.850. New rule 3.851 deletes prior rule 3.851 and the modification of rule 3.850 makes rule 3.850 consistent with new rule 3.851. These rule changes are consistent with the recommendations of the Supreme Court Committee on Postconviction Relief in Capital Cases.
New rule 3.851 reads as follows:
RULE 3.851 COLLATERAL RELIEF AFTER DEATH SENTENCE HAS BEEN IMPOSED
(a) Scope. This rule shall apply to all motions and petitions for any type of postconviction or collateral relief brought by prisoners in state custody who have been sentenced to death.
(b) Time Limitation.
(1) Any rule 3.850 motion to vacate judgment of conviction and sentence of death shall be filed by the prisoner within one year after the judgment and sentence become final. For the purposes of this rule, a judgment is final: (a) upon the expiration of the time permitted to file a petition for writ of certiorari in the United States Supreme Court seeking review of the decision of the Supreme Court of Florida affirming a judgment and sentence of death (90 days after the opinion becomes final), or (b) upon the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.
(2) All petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court's order on the rule 3.850 motion.
(3) The time limitation in subdivision (b)(1) is established with the understanding that each death-penalty prisoner will have counsel assigned and available to begin addressing the prisoner's postconviction issues within 30 days after the judgment and sentence become final. Should the governor sign a death warrant before the expiration of the time limitation in subdivision (b)(1), this Court will, upon a defendant's request, grant a stay of execution to allow any postconviction relief motions to proceed in a timely and orderly manner. Further, this time limitation shall not preclude the right to amend or to supplement pending pleadings pursuant to these rules.
(4) An extension of time may be granted by the Supreme Court of Florida for the filing of postconviction pleadings if the prisoner's counsel makes a showing of good cause for counsel's inability to file the postconviction pleadings within the one-year period established by this section.
(5) The provisions of rule 3.850, to the extent they are not inconsistent with this rule, remain applicable to postconviction or collateral relief.

*199 (6) The Court will review the operation and effectiveness of this rule on or before July 1, 1995. This rule will govern the cases of all death-sentenced individuals whose convictions and sentences become final after January 1, 1994.
Commentary
This rule is consistent with the recommendation of the Supreme Court Committee on Postconviction Relief in Capital Cases, which was created because of the substantial delays in the death penalty postconviction relief process. The committee was created because of the inability of the Capital Collateral Representative to properly represent all death penalty inmates in postconviction relief cases and because of the resulting substantial delays in those cases. That committee recognized that, to make the process work properly, each death row prisoner should have counsel available to represent him or her in postconviction relief proceedings. The committee found that one of the major problems with the process was that the triggering mechanism to start or assure movement of the postconviction relief proceedings was the signing of a death warrant. In a number of instances, the courts were not aware of problems concerning representation of a defendant until a death warrant was signed. In other instances, the committee found that, when postconviction relief motions had been filed, they clearly had not moved at an orderly pace and the signing of a death warrant was being used as a means to expedite the process. The committee recommended that specific named counsel should be designated to represent each prisoner not later than 30 days after the defendant's judgment and sentence of death becomes final. To assure that representation, the committee's report noted that it was essential that there be adequate funding of the capital collateral representative and sought temporary assistance from The Florida Bar in providing pro bono representation for some inmates.
There is a justification for the reduction of the time period for a capital prisoner as distinguished from a noncapital prisoner, who has two years to file a postconviction relief proceeding. A capital prisoner will have counsel immediately available to represent him or her in a postconviction relief proceeding, while counsel is not provided or constitutionally required for noncapital defendants to whom the two-year period applies.
In the event the capital collateral representative is not fully funded and available to provide proper representation for all death penalty defendants, the reduction in the time period would not be justified and would necessarily have to be repealed, and this Court will forthwith entertain a petition for the repeal of the rule. In this context, it is important to emphasize that the governor agrees that absent the circumstance where a competent death-sentenced individual voluntarily requests that a death warrant be signed, no death warrants will be issued during the initial round of federal and state review, provided that counsel for death penalty defendants is proceeding in a timely and diligent manner. This Court agrees that the initial round of postconviction proceedings should proceed in a deliberate but timely manner without the pressure of a pending death warrant.
Subdivision 3.851(b)(4) above addresses concerns of The Florida Bar and The Florida Bar Foundation.
The provisions of the present rule 3.851 providing for time periods where a 60-day warrant is signed by the governor, are abolished because they are unnecessary if the guidelines are followed. The proceedings and grounds for postconviction relief remain as provided under Florida Rule of Criminal Procedure 3.850, which include, as one of the grounds, the opportunity for a defendant to present newly discovered evidence in accordance with Scott v. Dugger, 604 So.2d 465 (Fla. 1992), Jones v. State, 591 So.2d 911 (Fla. 1991), and Richardson v. State, 546 So.2d 1037 (Fla. 1989).
Rule 3.850(b) is hereby modified as follows (the underlined portion of the rule is new; the struck-through portion is deleted):

*200 (b) Time Limitations. A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case or more than 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
Any person whose judgment and sentence became final prior to January 1, 1985, shall have until January 1, 1987, to file a motion in accordance with this rule.
Commentary
This amendment is necessary to make this rule consistent with rule 3.851.
These rules shall take effect at 12:01 a.m. on January 1, 1994. Any interested party has until November 15, 1993, to file comments with this Court regarding suggested amendments or changes to the rule.
It is so ordered.
McDONALD, GRIMES and HARDING, JJ., concur.
OVERTON, J., concurs with an opinion.
BARKETT, C.J., dissents with an opinion, in which KOGAN, J., concurs.
KOGAN, J., dissents with an opinion.
SHAW, J., dissents.
OVERTON, Justice, concurring.
I write primarily to respond to my colleagues' dissents. I strongly support the proposed rule because it will help assure effective counsel for death penalty defendants and, with the cooperation of the governor, it will allow the first postconviction relief proceedings to proceed in a deliberative, orderly, and timely manner, without the pressure of having the defendant under a death warrant.
It must be remembered that we are talking about a defendant who (1) has been tried, convicted, and sentenced to death; (2) his conviction and sentence have been affirmed by the Florida Supreme Court; and (3) any requested review has been denied by the United States Supreme Court. Under our postconviction process, the death-sentenced defendant then will have new counsel, who will have a full year to prepare whatever postconviction relief claims are proper to file.
The one-year period is clearly a reasonable time in which to commence postconviction relief proceedings. This time period in which to initiate postconviction relief proceedings for a death penalty prisoner, who has counsel ready and available to represent him or her, is consistent with the recommendations of The Florida Bar's Special Commission, chaired by John F. Yetter, Professor of Law, Florida State University, and the Criminal Justice Task Force Report to Governor Lawton Chiles dated February 27, 1991. It also gives a defendant twice as long as the six-month period suggested in the Powell Committee Report. See Ad Hoc Comm. on Federal Habeas Corpus in Capital Cases, Judicial Conference of the United States, Comm. Report and Proposal 1 (1989) (chaired by Justice Lewis Powell).
There is no "plain" constitutional violation as asserted by my colleague. Not only is this one-year period more than adequate, it is also consistent with the views of other objective entities.
BARKETT, Chief Justice, dissenting.
I am deeply troubled by the manner in which this Court adopts these rule changes. First, it is no secret that the Office of the Capital Collateral Representative has been underfunded and without the necessary resources to meet the legal needs of the 300-plus inmates on Florida's Death Row, despite *201 the express language of the statute establishing CCR.[1]
As Justice Kogan notes, the State has a clear obligation to provide adequate representation for these inmates. Yet the Legislature, in its 1993-94 Appropriations Act, places conditions on that obligation by including the following proviso language in the specific appropriations for CCR:
From the funds provided in Specific Appropriations 830 through 833, 17.5 FTES and $844,153 are contingent upon the Florida Supreme Court reducing the time frame from 2 years to 1 year within which a rule 3.850 motion for post conviction relief may be filed and the Florida Bar allocating $250,000 during the FY 1993-94 for this purpose.
Ch. 93-184, § 1A, at 1063, Laws of Fla. (emphasis supplied).
Thus, the Legislature attempts to confront the Court with the choice of adopting a rule change in order to improve legal representation for death-sentenced individuals or rejecting the change and putting up with inadequate representation. I suggest that this is an illusory choice and, worse, it establishes a dangerous precedent. It is illusory because this Court has the authority and obligation to ensure competent counsel and require the State to pay for it, albeit, perhaps, on a case-by-case basis. It should be self-evident that it is a dangerous precedent to attempt to coerce the Court into passing a rule "in exchange" for the Legislature agreeing to meet an existing responsibility. Moreover, the conditional language in the statute inappropriately interferes with this Court's constitutional authority to adopt rules for practice and procedure in all courts. See Art. V, § 2, Fla. Const.
Second, I agree with Justice Kogan that neither the Bar nor the Florida Bar Foundation should be underwriting the State's fiscal obligations.[2]
Finally, this is an ill-advised course of action because of the complexity of this process, which now will be even more cumbersome. The new time limits are conditioned on an understanding that each death-sentenced prisoner will have a specific lawyer, whether affiliated with CCR or not, assigned and available to begin addressing the prisoner's postconviction issues within thirty days after the judgment and sentence become final. If this does not occur, the time limit obviously must be extended for that defendant, and this determination still must be made on a case-by-case basis. This Court, however, also will have to determine, now and in the future, whether the Legislature has provided CCR with "full funding." Such a determination is not easy and will depend on any number of factors, including the number of death sentences that are upheld on direct appeal in a given year, the number of older post-conviction cases still being litigated, and the number and timing of death warrants. Additionally, even "full funding" may not ensure that CCR can adequately represent death-sentenced individuals within the new time frame if CCR is unable to hire and train qualified attorneys. Finally, what happens if the Legislature does not continue the full funding of CCR? Should that not occur, I am hopeful that the Bar will adhere *202 to its representations and obligations to take appropriate action.
Eliminating unwarranted delay in all court cases is a laudable goal, and one that I have endeavored to achieve in Florida's court system. However, the manner in which we attempt to accomplish that goal through these rule changes calls into question overriding principles that cannot be ignored. Ultimately, I am hopeful that the Legislature will adhere to its part of the bargain and assure that from now on each death row inmate will have a lawyer that will competently begin representing that inmate within the required thirty days.
KOGAN, J., concurs.
KOGAN, Justice, dissenting.
In order to obtain full funding of the Office of Capital Collateral Representative ("CCR"), this Court is adopting a Rule that abridges the right to obtain collateral relief in death cases. We do this despite the fact that we have held that relief of this type is guaranteed by the Florida Constitution, State v. Bolyea, 520 So.2d 562 (Fla. 1988), which expressly says that relief shall be available "of right, freely and without cost." Art. I, § 13, Fla. Const. For this reason alone, I must dissent. We should never let a constitutional right be diminished for the sake of money.
The Florida Legislature created CCR, and it is the Florida Legislature that has the responsibility to adequately fund its own agency. I therefore also must dissent from the majority's tacit decision to be party to an agreement by which CCR will receive sizable funding from The Florida Bar and the Florida Bar Foundation. The first of these agencies is an arm of the judicial branch, and the effect of today's bargain is to divert Bar funds into the funding of an agency created by the Legislature. It not only is hard to square this bargain with the doctrine of separation of powers, art. II, § 3, Fla. Const., but I also think every Florida lawyer rightfully should question using Bar funds for this purpose.
The second of these funding agencies is a private, nonprofit corporation that distributes charity derived from a number of Bar-related activities. This is the first time, to my knowledge, that substantial private funding is part of a political bargain by which a public agency will be endowed to fulfill its legislatively prescribed function.
I also note that the amendment adopted today most probably violates the rights to equal protection and due process. By the present amendment, the Court now says that persons sentenced to death shall have a shorter period of time to seek collateral relief than those suffering lesser penalties. This is an irrational distinction, since it assumes that the greater penalty is entitled to less due process than the lesser penalty. Contra art. I, §§ 2, 9, Fla. Const.
Some have argued that capital cases are different because each death-sentenced defendant is entitled to representation by CCR, while noncapital defendants are not. The fact remains, however, that many noncapital defendants have lawyers to pursue collateral challenges, yet the rules change at issue here still leaves these defendants with a full two years to pursue their challenges. The distinction created by the amendment thus remains irrational.
In promulgating rules, this Court obviously does not pass on constitutional issues. But when the constitutional violation is plain, I see no reason why we should waste everyone's time by adopting the rule. I therefore respectfully dissent.
NOTES
[1] The Office of the Capital Collateral Representative was created by the Legislature "to provide for the representation of any person convicted and sentenced to death in this state who is unable to secure counsel due to indigency, so that collateral legal proceedings to challenge such conviction and sentence may be commenced in a timely manner... ." § 27.7001, Fla. Stat. (1991). See Ch. 85-332, § 1, at 1977, Laws of Fla. By creating CCR, the Legislature assumed the obligation to pay for legal representation of indigent death-sentenced individuals.
[2] If these organizations are going to assume responsibility for some state government activities, I can suggest a long list of programs that likewise should be fully funded. As I noted in The Florida Bar re: Frankel, 581 So.2d 1294, 1300 (Fla. 1991) (Barkett, J., specially concurring), "[c]hildren, the poor, and especially poor children, have no constituency. It is only through the efforts of those who are already empowered that they can hope to compete with the interests able to represent themselves." I would have liked to permit the Bar to spend money lobbying for the improvement of children's programs, which was the issue in Frankel, but I believed that legally we could not do so. I suggest that the expenditure at issue in this case, while it arises in a different context, is no more appropriate.