756 So.2d 52 (2000)
Lloyd Chase ALLEN, et al., Petitioners,
v.
Robert A. BUTTERWORTH, et al., Respondents.
Mark James Asay, et al., Petitioners,
v.
Robert A. Butterworth, et al., Respondents.
Jeffrey Allen Farina, et al., Petitioners,
v.
State of Florida, Respondent.
Nos. SC00-113, SC00-154 and SC00-410.
Supreme Court of Florida.
April 14, 2000.
*53 Neal A. Dupree, Capital Collateral Regional Counsel, Southern Region, and Todd G. Scher, Litigation Director, Fort Lauderdale, Florida; Eugene Zenobi and Terence Lenamon, Coral Gables, Florida; John W. Moser, Capital Collateral Regional Counsel, Middle Region, and Michael P. Reiter, Chief Assistant CCRC, Middle Region, Tampa, Florida; and J. Rafael Rodriguez, Miami, Florida; Gregory C. Smith, Capital Collateral Counsel, Northern Region, and Andrew Thomas, Chief Assistant CCRC, Northern Region, Tallahassee, Florida; Timothy P. Schardl, Special Assistant CCRC, Northern Region, and Mark E. Olive of the Law Offices of Mark E. Olive, P.A., Tallahassee, Florida; Hilliard E. Moldof, Fort Lauderdale, Florida; Larry B. Henderson, Assistant Public Defender, Seventh Judicial Circuit, Daytona *54 Beach, Florida; Bennett H. Brummer, Public Defender, and Christina A. Spaulding, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida; and Nancy A. Daniels, Public Defender, and W.C. McLain, Michael J. Minerva and Chet Kaufman, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, Florida, for Petitioners.
Robert A. Butterworth, Attorney General, and Richard B. Martell, Chief, Capital Appeals, and Carolyn M. Snurkowski, Division Director, Office of the Attorney General, Tallahassee, Florida, for Respondents.
HARDING, C.J.
The petitioners, all inmates under sentence of death, have filed petitions asking this Court to stay the application of the Death Penalty Reform Act of 2000 (DPRA), chapter 2000-3, Laws of Florida (Committee Substitute for House Bill 1A (2000)), to toll the DPRA deadlines, and to declare the DPRA unconstitutional facially or as applied. For the reasons expressed below, we find that the DPRA is an unconstitutional encroachment on this Court's exclusive power to "adopt rules for the practice and procedure in all courts." Art. V, § 2(a), Fla. Const. Further, although our holding is based on the separation of powers claim, we find that some sections of the DPRA also violate due process and equal protection. The successive motion standard of the DPRA prohibits otherwise meritorious claims from being raised in violation of due process. Additionally, the successive motion standard applies only to capital prisoners in violation of the principles of equal protection. However, as explained in this opinion, we intend to adopt two new rules governing postconviction procedures that are consistent with the Legislature's intent that the postconviction process begin immediately upon imposition of the death sentence. The rules which we propose are intended to substantially reduce the time required for substantive adjudication of these cases.

JURISDICTION
Each of the petitioners in Farina v. State, No. SC00-410, has a direct appeal pending before this Court, while the petitioners in Allen v. Butterworth, No. SC00-113, and Asay v. Butterworth, No. SC00-154, have completed the direct appeal process and are represented by collateral counsel from the offices of Capital Collateral Regional Counsel (CCRC)-South and CCRC-North. The petitioners contend that this Court has jurisdiction over this matter based on its exclusive appellate jurisdiction in death cases and its original jurisdiction to hear ancillary petitions in cases where the death sentence has been imposed. See art. V, § 3(b)(1), Fla. Const. (mandatory appellate jurisdiction where death penalty imposed by trial court); id. § 3(b)(7) (prohibition and all writs); id. § 3(b)(8) (mandamus); id. § 3(b)(9) (habeas corpus). The parties also note that this Court has exclusive original jurisdiction to entertain petitions dealing with the regulation of the practice of law in Florida and petitions involving the rules for practice and procedure in the courts of Florida. See art. V, §§ 2(a), 15, Fla. Const.
The State contends that these actions are unauthorized and the petitioners' attorneys lack standing to maintain them. The State further contends that the facts asserted by the petitioners relate to speculative factual circumstances which may never occur, that no named client has been adversely impacted by the DPRA, and that no basis has been demonstrated for the extraordinary relief sought.
This Court has previously addressed the constitutionality of legislative acts through its mandamus authority. See Division of Bond Finance v. Smathers, 337 So.2d 805 (Fla.1976). Accordingly, we treat all of the petitions filed here as petitions for writs of mandamus. While this Court has entertained mandamus petitions involving constitutional challenges, "[o]rdinarily the initial challenge to the constitutionality of a statute should be made before *55 a trial court." Id. at 807. However, mandamus is the appropriate vehicle for addressing claims of unconstitutionality "where the functions of government will be adversely affected without an immediate determination." Id.; see also Dickinson v. Stone, 251 So.2d 268, 271 (Fla.1971).
In the instant case, the DPRA drastically changes Florida's postconviction death penalty proceedings, thereby affecting a large number of cases pending in this Court and at various stages in the trial courts throughout the state. The responsibilities of a large number of state-employed attorneys will also be affected by the DPRA. Until the constitutionality challenge is resolved, the status of these proceedings is in limbo. Thus, we conclude that the functions of government will be adversely affected without an immediate determination of the constitutionality of the DPRA and accept jurisdiction pursuant to our mandamus authority under article V, section 3(b)(8) of the Florida Constitution.

DEATH PENALTY REFORM ACT
The Florida Legislature passed the DPRA during a special legislative session in January 2000. Governor Jeb Bush signed the DPRA on January 14, 2000, and it became effective that day. The DPRA significantly changes Florida's capital postconviction procedures. Most notable among these changes is the creation of a "dual-track" capital postconviction process, in which a death-sentenced inmate files postconviction claims almost contemporaneously with his or her direct appeal. The preamble to the DPRA states:
WHEREAS, it is in the best interest of the administration of justice that a sentence of death ordered by the courts of this state be carried out in a manner that is fair, just, and humane and that conforms to constitutional requirements, and
WHEREAS, in order for capital punishment to be fair, just, and humane for both the family of victims and for offenders, there must be a prompt and efficient administration of justice following any sentence of death ordered by the courts of this state, and
WHEREAS, in order to ensure the fair, just, and humane administration of capital punishment, it is necessary for the Legislature to comprehensively address both the method by which an execution is carried out and the processes by which an offender sentenced to death may pursue postconviction and collateral review of the judgment and the sentence of death....
The following is a brief synopsis of the substance of each section of the DPRA:
Section 1 provides that the act may be cited as the "Death Penalty Reform Act of 2000."
Section 2 amends the statute relating to the duties of capital collateral regional counsel and registry counsel. Under the DPRA, these attorneys may file only postconviction actions authorized by the statute.
Section 3 amends the statute relating to the production of public records in capital postconviction proceedings (section 119.19, Florida Statutes (1999)). In light of the dualtrack system, the DPRA provides for the production of public records during the pendency of a defendant's direct appeal proceeding. It compresses the time frames for agency responses to public records requests and requires agencies to send records claimed to be confidential or exempt directly to the clerk of the court instead of the records repository, in order to facilitate in-camera inspection by the court.
Section 4 provides that a capital defendant must pursue all collateral remedies within the statutory limits set by the DPRA, that any claim outside the limits is barred, and that failure to seek relief within the required time limits constitutes grounds for issuance of a death warrant.

*56 Section 5 states the legislative intent that all appeals and postconviction actions in capital cases be resolved within five years of the imposition of the death sentence and that death-sentenced inmates or their counsel file only one postconviction action in a sentencing court and take only one appeal of that action to this Court.
Section 6 creates a new statutory section governing postconviction actions in all cases where the death sentence is imposed after the effective date of the DPRA. This section implements the dual-track system by providing that postconviction counsel must be appointed within fifteen days of imposition of the death sentence and that postconviction actions are barred unless a fully pled motion is filed within 180 days of the filing of the initial appellate brief. The section also sets a number of restrictions on postconviction procedures, including no extension of time based upon the pendency of public records requests or litigation and no tolling of the time for commencing a postconviction action for any reason or cause. This section also drastically limits the claims that can be raised in a successive motion.
Section 7 creates a new statutory section governing postconviction cases where the death sentence was imposed before the effective date of the DPRA. This section bars all postconviction actions that are not commenced by January 8, 2001.
Section 8 creates a new statutory section regulating the procedures in all capital postconviction actions commencing after the effective date of the DPRA, unless this Court adopts rules revising the procedures. This section provides that: a defendant shall file only one capital postconviction action in the sentencing court, one appeal therefrom in this Court, and one original postconviction action alleging ineffectiveness of appellate counsel; all postconviction actions must be filed under oath and be fully pled; and no amendment is permitted after the time limits for commencement of postconviction actions has expired.
Section 9 creates a new statutory section governing time limitations during judicial review, unless this Court adopts rules revising the procedures. This section prohibits amendment of a postconviction motion after the original filing period has expired, interlocutory appeals, and motions for rehearing.
Section 10 repeals Florida Rule of Criminal Procedure 3.850 to the extent it is inconsistent with the DPRA and completely repeals rules 3.851 and 3.852.
Section 11 amends the statute relating to registry counsel. The section provides that the appropriation for registry counsel fees goes directly to the Comptroller, the agency charged with contract management. This section also authorizes CCRC to withdraw from a case, thereby allowing for immediate appointment of registry counsel.
Section 12 amends the statute defining the duties of the public defender to prohibit the same public defender's office from representing a defendant both at trial and on direct appeal.
Section 13 amends the statute relating to conflict of interest and substitute counsel. The section prohibits CCRC from accepting an appointment or taking any other action that will create a conflict of interest and permits withdrawal of CCRC in any case where a conflict of interest exists.
Section 14 involves the disbursement of funds for conflict of interest counsel and authorizes a transfer of funds to be used for contracts with private attorneys.
Section 15 authorizes the Commission on Capital Cases to compile and analyze case-tracking reports produced by this Court and to report findings to the Legislature.
Section 16 amends the statute governing the terms and conditions of appointment of postconviction counsel to require registry *57 attorneys to provide billing documentation to the Comptroller prior to submission to the court. The Comptroller's contract manager must review this documentation for compliance with contractual and statutory requirements and has standing to object to the payment.
Section 17 "strongly encourages" the courts to impose sanctions upon persons who engage in abusive or dilatory practices in postconviction proceedings.
Section 18 provides that sentencing orders in capital cases must not specify a particular method of execution and that the wording of such orders may not be the grounds for reversing a death sentence.
Section 19 repeals the statutory subsection relating to time limits for the filing of a postconviction motion for relief.
Section 20 requests that this Court study the feasibility of centralized case management whereby all capital postconviction actions would be filed in this Court.
Section 21 is a severability clause.
Section 22 provides that the DPRA is effective upon becoming law.

HISTORICAL BACKGROUND
We recognize that the Legislature passed the DPRA with the intent of improving the efficiency and speed of the judicial process in those cases involving defendants who have been sentenced to death. See ch.2000-3, preamble, Laws of Fla.; Fla. CS for HB 1-A, at 3 ("Whereas... there must be a prompt and efficient administration of justice following any sentence of death ordered by the courts of this state."); see also id. at 14-15 (amending § 924.055, Fla. Stat.) ("It is the intent of the Legislature to reduce delays in capital cases....").
However, the DPRA represents only the latest in a long history of efforts by all three branches of Florida government to improve the efficiency of Florida's death penalty process. In October 1990, this Court created the Supreme Court Committee on Postconviction Relief Proceedings to consider a number of matters, including how to provide proper representation and timely resolution for all postconviction relief matters pending in this Court. In March 1991, the Committee recommended that postconviction counsel be designated in each case within thirty days of mandate issuing from this Court or certiorari being denied by the United States Supreme Court and that until additional funding and staff could be provided to the office of Capital Collateral Representative (CCR), the Court seek pro bono assistance from the Volunteer Lawyers Resource Center (VLRC) and members of The Florida Bar. In 1994, the Court adopted new Florida Rule of Criminal Procedure 3.851, which reduced to one year the time period for filing postconviction motions in capital cases. In the commentary to the rule, the Court reasoned that the reduction of the time period for filing a motion for a capital prisoner as distinguished from a noncapital prisoner was justified because "[a] capital prisoner will have counsel immediately available to represent him or her in a postconviction relief proceeding, while counsel is not provided or constitutionally required for noncapital defendants to whom the two-year period applies." In re Rule of Criminal Procedure 3.851, 626 So.2d 198, 199 (Fla.1993). At the request of Governor Lawton Chiles, the Supreme Court Committee on Postconviction Relief Proceedings was reconstituted in 1994 and charged with reviewing the effectiveness of rule 3.851, evaluating how the Committee's recommendations had been implemented, and improving administrative coordination with the federal courts.
After CCR filed an emergency motion to toll the one-year deadline in rule 3.851, the Court appointed former Attorney General Robert Shevin to study the problems created by CCR's failure or inability to provide necessary counsel for death row inmates. After the Shevin report was issued in February 1996 addressing this problem, *58 the Governor and the legislative leadership appointed a committee headed by former Justice Parker Lee McDonald to study postconviction representation and recommend reforms to the Legislature. Pursuant to this committee's recommendation, the Legislature divided CCR into three regional offices, known as Capital Collateral Regional Counsel (CCRC), effective July 1997.
While these reforms were being implemented in Florida, Congress removed funding for the Legal Services Corporation, which provided funding for the VLRC to represent Florida death row inmates not represented by CCR. This collapse of the VLRC significantly increased the number of defendants that CCR had to represent in postconviction proceedings and resulted in funding deficiencies for CCR. Due to the collapse of the VLRC and the reorganization of the CCRC regional offices, this Court tolled the time for filing postconviction motions. The 1998 Legislature also created Registry Counsel to fill the need for additional postconviction counsel after the demise of the VLRC. See ch. 98-197, § 3, at 1741-43, Laws of Fla. (creating § 27.710, Fla. Stat. (1999)).
In 1997, this Court directed the chief judges to inventory all postconviction proceedings and present quarterly reports to the Court. This process has identified dormant cases that are now proceeding to conclusion. This Court is implementing a new online case management system that will electronically track all cases throughout the state. Additionally, in response to the delays attributed to the preparation of the record on appeal,[1] this Court recently issued orders to court reporters to complete and file transcripts in a timely fashion and, if the transcript was not filed, to appear before the circuit court judge who would recommend sanctions to this Court. See Lugo v. State, No. 93,994 (Fla. Oct. 13, 1999); Doorbal v. State, No. 93,988 (Fla. Oct. 13, 1999).
Also in 1997, this Court enacted Florida Rule of Judicial Administration 2.050(b)(10), which instituted a mandatory training course on capital cases for all circuit judges presiding over capital cases. See In re Amendment to Fla. Rules of Jud. Admin., 688 So.2d 320 (Fla.1997). We recently created a similar rule addressing the minimum standards for attorneys representing indigent defendants in capital cases. See In re Amendment to Fla. Rules of Crim. Pro., 24 Fla. L. Weekly S512, ___ So.2d ___, 1999 WL 983852 (Fla. Oct. 28, 1999). The rule applies to the appointment of counsel made after July 1, 2000.
In recognition of the delays being caused by litigation relating to public records requests, in 1996 this Court adopted Florida Rule of Criminal Procedure 3.852 to govern public records requests in postconviction proceedings. In 1998, the Legislature passed section 119.19, Florida Statutes, which repealed rule 3.852 and established a procedure for the production of public records in postconviction cases. Section 119.19 also organized a central repository for those records. Prior to the enactment of section 119.19, the Court created the Supreme Court Committee on Postconviction Relief in Capital Cases, chaired by Judge Stan Morris and comprised of judges with trial experience, to address the production of public records and offer revisions to the rule in response to issues that the trial courts routinely face in such cases. The Morris Committee proposed a revised rule which the Court adopted in September 1998. See Amendments *59 to Fla. Rules of Crim. Pro., 723 So.2d 163 (Fla.1998).[2]
After the enactment of section 119.19, the Court reconstituted the Morris Committee and directed it to conduct a study of capital postconviction proceedings, identify delays and their causes, and make recommendations concerning rule 3.851 and the case management of postconviction capital cases. The committee recommended a revision of rule 3.851 and a roundtable discussion of this proposal was conducted at the Court in December 1999. While the Court was considering the committee's proposal, the Legislature adopted the DPRA.
All of these measures indicate a concerted effort by the three branches of Florida government to ensure the timely and orderly administration of capital case proceedings. While this Court will continue such efforts, we are also mindful that our primary responsibility is to follow the law in each case and to ensure that the death penalty is fairly administered in accordance with the rule of law and both the United States and Florida Constitutions. "While all judicial proceedings require fair and deliberate consideration by a trial judge, this is particularly important in a capital case because, as we have said, death is different." Crump v. State, 654 So.2d 545, 547 (Fla.1995); accord Walker v. State, 707 So.2d 300, 319 (Fla.1997). The United States Supreme Court has also repeatedly emphasized that the Eighth Amendment requires a heightened degree of reliability in capital cases:
[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.
Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)(plurality opinion).

ANALYSIS
With this history of administrative refinement, and bearing in mind this Court's responsibility over death penalty proceedings, we turn our attention to the challenges to the DPRA. The petitioners raise the following claims concerning the constitutionality of the DPRA: (1) the act violates the separation of powers doctrine; (2) the act impermissibly suspends the writ of habeas corpus; (3) the act violates equal protection and due process; and (4) the act interferes with a defendant's right to effective representation of counsel.

1. Separation of Powers
We find the resolution of the separation of powers claim to be dispositive in this case. Article II, section 3 of the Florida Constitution prohibits the members of one branch of government from exercising "any powers appertaining to either of the other branches unless expressly provided herein." Article V, section 2(a) states that the Florida Supreme Court has the exclusive authority to "adopt rules for the practice and procedure in all courts, including the time for seeking appellate review." The Legislature has the authority to repeal judicial rules by a two-thirds vote, but the authority to initiate rules rests with the Court. See Johnson v. State, 336 So.2d 93, 95 (Fla.1976); art. V, § 2(a), Fla. Const.
Generally, the Legislature has the power to enact substantive law, while the Court has the power to enact procedural law. See Johnson. In In re Rules of Criminal Procedure, Justice Adkins provided *60 the following definitions for substantive law and procedural law:
Practice and procedure encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. "Practice and procedure" may be described as the machinery of the judicial process as opposed to the product thereof.
Examination of many authorities leads me to conclude that substantive law includes those rules and principles which fix and declare the primary rights of individuals as respects their persons and their property. As to the term "procedure," I conceive it to include the administration of the remedies available in cases of invasion of primary rights of individuals. The term "rules of practice and procedure" includes all rules governing the parties, their counsel and the Court throughout the progress of the case from the time of its initiation until final judgment and its execution.
272 So.2d 65, 66 (Fla.1972) (Adkins, J., concurring). To resolve the separation of powers claim in this case, we must determine whether the provisions of the DPRA are substantive or procedural.
The State argues that the deadlines for filing postconviction motions in the DPRA are statutes of limitations and are therefore substantive. To support this argument, the State relies on this Court's previous decision in Williams v. Law, 368 So.2d 1285 (Fla.1979).
In Williams, two property owners applied to the Pasco County property appraiser for an agricultural classification. The application was denied and the owners petitioned the Pasco County Board of Tax Adjustment for relief. The Board granted the owners the classification and the property appraiser filed an action in circuit court seeking to enjoin the Board from enforcing its decision, pursuant to section 194.032(6)(a), Florida Statutes (Supp.1976). The circuit court dismissed the suit as untimely. The circuit court reasoned that because the suit amounted to an appeal from an administrative decision of the Board, it was required to be filed within thirty days of the Board's decision under Florida Appellate Rule 3.2 (1962). The circuit court also concluded that section 194.171(2), Florida Statutes (1975), which provided a sixty-day time limit for instituting civil actions in circuit court to challenge property tax assessments, violated the Court's exclusive authority to adopt rules of practice and procedure.
On appeal, this Court ruled that the proceeding established by section 194.032(6) was not an appellate proceeding and, therefore, was not covered by the appellate rules. See id. at 1287 ("[Section 194.032(6)(a)] clearly contemplates that injunctive relief shall be sought by way of an original civil action rather than by appeal."). The Court stated that the sixty-day limit set forth in section 194.171(2) "constitutes a statute of limitations governing the time for filing an original action to challenge [a decision of the Board of Tax Adjustment]" and "the legislature clearly has the authority to establish such limitations." Id. at 1287-88.
Williams, however, is distinguishable from the present case. Although habeas corpus petitions are technically civil actions, they are unlike other traditional civil actions. In State ex rel. Butterworth v. Kenny, this Court detailed the history of habeas corpus in Florida:
Historically, habeas corpus and coram nobis proceedings were the only means available to challenge the validity of a conviction and sentence. In 1963, this Court enacted Florida Rule of Criminal Procedure 1, which was the predecessor to current Florida Rules of Criminal Procedure 3.850 and 3.851. The rule was almost identical to its federal counterpart and was adopted to
provide a complete and efficacious postconviction remedy to correct convictions where there is a claimed denial of some fundamental or organic *61 right in the course of the trial, and the procedural default of failing to appeal from a judgment of conviction is not equivalent to an express waiver of the constitutional right and will not preclude collateral attack on an unlawful conviction by means of a proceeding brought under the criminal procedure rule.
28 Fla. Jur.2d, Habeas Corpus § 127 (1981) (footnote omitted). The relief provided by the rule was coextensive with that available under habeas corpus or coram nobis proceedings but minimized the difficulties encountered in those proceedings by directing that a motion for relief is to be addressed to the court that imposed the sentence. Id. In the rule, this Court clearly stated that a habeas corpus petition was not to be entertained and that the process set forth in the rule for seeking postconviction relief was to be used unless the remedy by motion under the rule was "inadequate to test the legality of [the] detention." [In re Criminal Procedure, Rule No. 1,] 151 So.2d [634,] at 635 [(Fla.1963)]. Thus, while habeas corpus and coram nobis are still used in the postconviction process, their use is somewhat limited.
Technically, habeas corpus and other postconviction relief proceedings are classified as civil proceedings. Unlike a general civil action, however, wherein parties seek to remedy a private wrong, a habeas corpus or other postconviction relief proceeding is used to challenge the validity of a conviction and sentence. See, e.g., Murray[ v. Giarratano], 492 U.S. [1] at 13[, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989)] (O'Connor, J., concurring) (postconviction proceeding is a civil action designed to overturn a presumptively valid criminal judgment); O'Neal v. McAninch, 513 U.S. 432, 440[, 115 S.Ct. 992, 130 L.Ed.2d 947] (1995) (habeas is a civil proceeding involving someone's custody rather than mere civil liability). Consequently, postconviction relief proceedings, while technically classified as civil actions, are actually quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction.
714 So.2d 404, 408-10 (Fla.1998) (footnotes omitted).
In addition to being quasi-criminal, the writ of habeas corpus is explicitly derived from text of the Florida Constitution, which provides that the writ "shall never be suspended unless, in case of rebellion or invasion, suspension is essential to the public safety." Art. I, § 13, Fla. Const. As this Court explained in Haag v. State, 591 So.2d 614, 616 (Fla.1992), "[a] basic guarantee of Florida law is that the right to relief through the writ of habeas corpus must be `grantable of right, freely and without cost.'" (quoting article I, section 13 of the Florida Constitution). While the right to habeas relief "is subject to certain reasonable limitations consistent with [its] full and fair exercise," it "should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality." Id.
Further, this Court has explained that "[r]ule 3.850 is a procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus." State v. Bolyea, 520 So.2d 562, 563 (Fla.1988);[3]see also Roy v. Wainwright, 151 So.2d 825, 828 (Fla.1963). "[A]s a general rule ... whatever power is conferred upon the courts by the Constitution cannot be enlarged or abridged by the Legislature." State ex rel. Buckwalter v. City of Lakeland, 112 Fla. 200, 208, 150 So. 508, 512 (1933) (finding that legislative act improperly attempted to interfere with judicial power to issue writs of mandamus and to *62 limit scope of writ of mandamus); see also Brinson v. Tharin, 99 Fla. 696, 702, 127 So. 313, 316 (1930) (stating that power to issue common law writ of certiorari was vested in the Court by the Constitution and could not be extended, limited, or regulated by statute); Palmer v. Johnson, 97 Fla. 479, 480-81, 121 So. 466, 466-67 (1929) (stating that if statute were intended to circumscribe Supreme Court's constitutional power of certiorari review of inferior tribunals, it would be ineffectual).
Based on the foregoing, we conclude that the writ of habeas corpus and other postconviction remedies are not the type of "original civil action" described in Williams for which the Legislature can establish deadlines pursuant to a statute of limitations. Due to the constitutional and quasi-criminal nature of habeas proceedings and the fact that such proceedings are the primary avenue through which convicted defendants are able to challenge the validity of a conviction and sentence, we hold that article V, section 2(a) of the Florida Constitution grants this Court the exclusive authority to set deadlines for postconviction motions.[4]
The State also directs our attention to the "Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA), wherein Congress imposed a one-year deadline for habeas corpus filings in federal courts. See 28 U.S.C. § 2244 (Supp. III 1997) *63 (standard for prisoners in state custody); id. at § 2255 (standard for prisoners in federal custody). This deadline has been interpreted by the federal courts as a statute of limitations. See, e.g., Weekley v. Moore, 204 F.3d 1083, 1083 (11th Cir.2000) ("The AEDPA added a one year statute of limitations to federal habeas corpus actions."). The State asserts that if Congress has the authority to set a statute of limitations in this area, then the Florida Legislature should also have that authority. This argument, however, is not persuasive, as there are significant distinctions between the balance of power in the federal system and the balance of power in this state. Although the federal constitution grants the United States Supreme Court limited original jurisdiction, article III, section 2 provides that the appellate jurisdiction of the United States Supreme Court is derived from the authority of Congress. In contrast, the original and appellate jurisdiction of the courts of Florida is derived entirely from article V of the Florida Constitution. See art. V, §§ 3(b), 4(b), 5(b), Fla. Const. Further, the United States Supreme Court has recognized that "the power to award the writ [of habeas corpus] by any of the courts of the United States, must be given by written law" and "judgments about the proper scope of the writ are normally for Congress to make." Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (internal quotation marks omitted). In Florida, article V of the Florida Constitution explicitly grants circuit courts, district courts, and this Court the authority to issue writs of habeas corpus. See art. V, §§ 3(b)(9), 4(b)(3), 5(b), Fla. Const. Finally, the United States Supreme Court promulgates the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure pursuant to the authority conferred to it by Congress under the Rules Enabling Act. See 28 U.S.C. § 2072 (1994). As pointed out by the Fifth Circuit Court of Appeals:
It has long been settled that Congress has the authority to regulate matters of practice and procedure in the federal courts. Sibbach v. Wilson & Co., 312 U.S. 1, 9-10[, 61 S.Ct. 422, 85 L.Ed. 479] (1941). Congress delegated some of this power in 1934 by passing the Rules Enabling Act, which gave the Supreme Court the power to promulgate rules of practice and procedure for United States courts. Despite this delegation of authority, Congress maintains an integral, albeit passive, role in implementing any rules drafted by the Court. For example, all such rules are subject to review by Congress; they take effect only after the Supreme Court has presented them to Congress and after Congress has had seven months to review proposed rules or changes. Congress uses the review period to "make sure that the action under the delegation squares with the Congressional purpose." Sibbach, 312 U.S. at 15[, 61 S.Ct. 422]. Although Congress has authorized the Court to exercise some legislative authority to regulate the courts, Congress at all times maintains the power to repeal, amend, or supersede its delegation of authority or the rules of procedure themselves. Therefore Congress may at any time amend or abridge by statute the Federal Rules of Civil Procedure, Rules of Appellate Procedure, Rules of Evidence, or other federal procedural rules promulgated under the Rules Enabling Act.
Jackson v. Stinnett, 102 F.3d 132, 134 (5th Cir.1996) (citations omitted). In Florida, article V, section 2(a) of the Florida Constitution grants this Court the exclusive authority to adopt rules of procedure. Consequently, the separation of powers' argument raised in the present case would never be an issue in the federal system. Unlike the Florida Constitution, the federal constitution does not expressly grant the United States Supreme Court the power to adopt rules of procedure. In fact, it appears that the two branches work together in formulating procedural rules in the federal system. Hence, the State's *64 reliance on the AEDPA is clearly without merit.[5]
For all of these reasons, we conclude that the establishment of time limitations for the writ of habeas corpus is a matter of practice and procedure and, therefore, the judiciary is the only branch of government authorized by the Florida Constitution to set such deadlines. Accordingly, we hold the DPRA in large part invalid as an encroachment on this Court's exclusive power to "adopt rules for the practice and procedure in all courts." Art. V, § 2(a), Fla. Const. Most of its provisions attempt to prescribe the "course, form, manner, means, method, mode, order, process or steps" by which a capital inmate's habeas corpus rights are asserted in Florida courts. In re Florida Rules of Criminal Procedure, 272 So.2d at 66 (Adkins, J., concurring). The introductions to sections 8 and 9 actually concede this point: "This section shall regulate the procedures in actions for capital postconviction relief commencing after the effective date of this act unless and until such procedures are revised by rule or rules adopted by the Florida Supreme Court which specifically reference this section." Ch.2000-3, §§ 8-9, Laws of Fla.; Fla. CS for HB 1-A, §§ 8-9, at 21-22 (2000).

2. Severability
Section 21 of the DPRA states that "[i]f any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable." We must determine whether the remaining sections can be severed from the sections that we have found unconstitutional. In State ex rel. Boyd v. Green, this Court provided the framework for whether provisions of a statute can be severed:
An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining provisions, i.e., if the expressed legislative purpose can be accomplished independently of those provisions which are void, if the valid and invalid provisions are not inseparable, if the Legislature would have passed one without the other, and if an act complete in itself remains after the invalid provisions are stricken.
... The test remains whether the portion to be stricken is of such import that the remainder would not be complete or would cause results not contemplated by the Legislature.
355 So.2d 789 at 794-95 (Fla.1978) (citations omitted). With the exception of sections *65 11 (providing that the appropriation for registry counsel fees goes directly to the Comptroller and authorizing CCRC to withdraw from a case, thereby allowing for appointment of registry counsel), 14 (regarding disbursement of funds for conflict counsel and authorizing transfer of funds to be used for contracts with private attorneys), 15 (authorizing the Commission on Capital Cases to compile and analyze case-tracking reports produced by this Court), and 16 (requiring registry attorneys to provide billing documentation to the Comptroller prior to submission to the court), we conclude that the remaining sections cannot be logically separated from the unconstitutional sections, as these sections are inextricably intertwined. We do not strike sections 11, 14, 15, and 16 because these sections are consistent with the procedures articulated in our proposed rules, as explained below.

3. Proposed Rules of Procedure
Notwithstanding our conclusions as to the DPRA, this Court shares the Legislature's frustration regarding unnecessary delay in capital cases. See, e.g., Peede v. State, 748 So.2d 253, 255-56 n. 4 (Fla. 1999). Accordingly, in response to the Legislature's express acknowledgment in newly enacted section 924.058 that the Florida Supreme Court is to develop rules to implement death penalty reform consistent with the Legislature's purpose behind the DPRA, we have today proposed substantial amendments to Florida Rules of Criminal Procedure 3.851 and 3.852. See Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, 3.993, No. SC96646, ___ So.2d ___, 2000 WL 381496 (Fla. Apr. 14, 2000). The proposed rules will be published in The Florida Bar News, and interested parties will be invited to comment on and make suggestions regarding the rules, directed to the Court, by June 1, 2000. The previous versions of rules 3.850, 3.851, and 3.852 will govern capital postconviction cases until the proposed rules become effective because section 10, which repealed those previous rules, is now ineffective. See State ex rel. Boyd v. Green, 355 So.2d 789, 795 (Fla.1978) ("Where a repealing act is adjudged unconstitutional, the statute (or in this case the rule) it attempts to repeal remains in force.").
We are mindful of the Legislature's express intent that a sentence of death "be carried out in a manner that is fair, just, and humane and that conforms to constitutional requirements," and that there "be a prompt and efficient administration of justice following any sentence of death." Ch.2000-3, preamble, Laws of Fla.; Fla. CS for HB 1-A, at 3 (2000). In developing the proposed rules, we have attempted to strike a proper balance between the State's legitimate interest in the prompt and efficient administration of justice in capital cases and the capital defendant's legitimate interest that the capital postconviction process be fair, just, and humane.

4. Public Records
In order for the modified dual-track system we have proposed in our amended rules to work, postconviction counsel must be afforded the opportunity to begin an investigation immediately upon appointment. A large part of this investigation will center around various public records in the possession of the law enforcement offices that investigated the case and the state attorney's office that tried the case. This Court has recognized that "chapter 119 grants a substantive right to Florida citizens," on which the Legislature "has the prerogative to place reasonable restrictions." Henderson v. State, 745 So.2d 319, 326 (Fla.1999). Section 119.011(3)(d)(2), Florida Statutes (1999), provides that criminal intelligence and criminal investigation information shall be considered "active" while such information is directly related to pending prosecutions or appeals. Section 119.07(3)(b), Florida Statutes (1999), exempts active criminal intelligence and investigative information from disclosure as a public record, while section 119.07(3)(l), exempts public records prepared by an agency attorney from disclosure until conclusion of the litigation. This *66 Court has explained that the exemptions end when the conviction and sentence become final. See State v. Kokal, 562 So.2d 324, 326-27 (Fla.1990). Thus, under the current state of the law, many of the files compiled by the state attorney's office and law enforcement agencies do not have to be disclosed until the defendant's sentence and conviction become final after direct appeal.
During oral argument in this case, the State conceded that in order for a dual-track system to work properly, the public records exemptions must expire upon the imposition of the death sentence, rather than upon issuance of mandate from this Court. Yet, in passing the DPRA, the Legislature did not change the definitions or exemptions in sections 119.011(3)(d)(2), 119.07(3)(b), and 119.07(3)(l), and therefore the State can still claim exemptions for the majority of its files until this Court issues its mandate. If the Legislature is committed to a dual-track system, then we urge it to amend sections 119.011(3)(d)(2), 119.07(3)(b), and 119.07(3)(l) to reflect that the exemptions will expire upon imposition of the death sentence. Our proposed rules cannot take effect until the Legislature takes these steps. As stated above, we are publishing the proposed rules in the The Florida Bar News and affording interested parties until June 1, 2000, to file comments with this Court. This should give the Legislature ample time to amend the exemptions in chapter 119. If the Legislature does not act in this area, then we will be forced to extend the period for filing an initial postconviction motion in order to allow adequate time after mandate for public records requests. In other words, without these changes, the dual-track system would, in essence, be meaningless.
Next, we feel it is important to specifically address section 3 of the DPRA, which substantially amends section 119.19. Although this Court has recognized that the Legislature "has the prerogative to place reasonable restrictions" on the right of public records access, Henderson, 745 So.2d at 326, this Court has also noted that rule 3.852 is "a discovery rule for public records production ancillary to proceedings pursuant to rule 3.850 and 3.851." Amendments to Florida Rules of Criminal Procedure 3.852, 754 So.2d 640, 642 (Fla. 1999). Hence, the Legislature has the authority to define the substantive right to public records, but the adoption of time limitations and procedures governing the production of public records in capital cases is within the exclusive province of this Court. With the exception of section 119.19(9) (directing the Secretary of State to provide the personnel, supplies, and any necessary equipment to copy records held at the records repository),[6] which is consistent with our proposed rules, we find that section 3 of the DPRA is unconstitutional, as this section attempts to regulate the procedure for public records production in capital cases.

5. Evidentiary Hearings
In addition to the unnecessary delay and litigation concerning the disclosure of public records, we have identified another major cause of delay in postconviction cases as the failure of the circuit courts to grant evidentiary hearings when they are required. This failure can result in years of delay. This Court has been compelled to reverse a significant number of cases due to this failure. When a case gets reversed for this reason, the entire system is put on hold, as the hearing on remand takes many months to be scheduled and completed, and the appeal therefrom takes many additional months in order for the record on appeal to be prepared and the briefs to be filed in this Court. In order to alleviate this problem, our proposed rules require that an evidentiary hearing be held in respect *67 to the initial motion in every case. This single change will eliminate a substantial amount of the delay that is present in the current system.

CONCLUSION
It is important to emphasize one more point. A reliable system of justice depends on adequate funding at all levels. Obviously, this means adequate funding for competent counsel during trial, appellate, and postconviction proceedings for both the State and the defense, including access to thorough investigators and expert witnesses.[7] It is critical that this state provides for adequately funded and trained public defenders, conflict counsel, and CCR and registry counsel, as these are vital to the reliability and efficiency of the trial, appellate, and postconviction process. Adequate funding is also needed for the court system, including informed judges, trained judicial support staff, and other important resources, such as real-time reporting[8] and case management systems. There have been increasing demands on the courts of this state-particularly in the criminal and juvenile divisionsand the judicial branch needs the proper resources to meet these demands and manage these cases.
Along with the input of the Legislature, this Court is boarding a ship to set sail on a course of reform in the area of capital postconviction procedures. However, the ship's departure will be delayed until the Legislature changes the public records exemptions of chapter 119 to comply with the dual-track system. Additionally, without the necessary funding, the ship is destined to sink.
Accordingly, for the reasons expressed in this opinion, we find the DPRA unconstitutional, with the exception of sections 11, 14, 15, 16, and a portion of section 3 (section 119.19(9)). In place of the DPRA, we propose new rules 3.851 and 3.852. These rules are consistent with the Legislature's intent that postconviction actions in capital cases be "carried out in a manner that is fair, just, humane and that conforms to constitutional requirements." Ch.2000-3, preamble, Laws of Fla.; Fla. CS for HB 1-A, at 3 (2000).
It is so ordered.
SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., concurs with an opinion, in which HARDING, C.J., and ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, J, concurring.
I concur with the majority. I conclude that the procedural parts of the Death Penalty Reform Act are so inextricably intertwined with the other parts that it unconstitutionally invades the province of the Court.
I write only to echo the majority's pointing to the real progress made in this process in the last three years. This progress is owed in no small measure to the efforts of legislative leaders who have provided funding so that each postconviction capital defendant has counsel, have provided the funding and structure for the Commission on Capital Cases, and have implemented *68 the repository for public records. This progress is real and must be valued and protected.
There is much work to be done through the cooperative efforts of all three branches of government, while obviously safeguarding each branch's independent functions. All of us must be vigilant in our efforts to ensure proper and adequate legal representation for these defendants in trial and appellate courts. This requires adequate funding each and every year including funding for public defenders, for each of the CCRCs, and for appointed private counsel.
In the judicial branch we must continue to develop our case management and tracking system. We must continue and renew our work in training our judges and counsel. This also requires adequate funding.
I am encouraged by the development of the proposed rules we release today for publication. It is important to take the steps taken by these proposals. I echo the gratitude expressed to Judge Morris and the other experienced judges who formed that committee and whose expertise and counsel is so necessary to be able to do what is right in respect to this procedure.
We must always be mindful of the condition of imprisonment in which these defendants are maintained. The procedures of postconviction in capital cases must be focused so that the defendant who should not be on death row is removed from that condition at as early a time as possible. That is the legitimate goal of postconviction proceedings and the abiding reason that we must continue our efforts in removing unwarranted delay from the processing of these cases.
HARDING, C.J., and ANSTEAD, PARIENTE and LEWIS, JJ., concur.
NOTES
[1] Florida Rule of Appellate Procedure 9.140(e) provides in relevant part:

(1) Service. The clerk of the lower tribunal shall prepare and serve the record prescribed by rule 9.200 within 50 days of the filing of the notice of appeal.
In practice, however, this Court has routinely been required to grant extensions for filing the record on appeal in order that the transcripts can be prepared.
[2] This Court did not blindly adopt the time limits and procedures that the Legislature included in section 119.19. Instead, the Court conducted a thoughtful rule-making process, which ultimately incorporated recommendations from the Committee and practitioners familiar with postconviction public records production.
[3] Rule 3.851 was created after rule 3.850 and provides the procedural framework for post-conviction relief sought by capital prisoners.
[4] In addition to Williams, the State also asserts that the Legislature has the authority to set time limitations for postconviction motions based on this Court's previous decision in Kalway v. Singletary, 708 So.2d 267 (Fla. 1998). In Kalway, a prisoner filed a petition for a writ of mandamus challenging a prisoner disciplinary action by the Department of Corrections. The circuit court denied the writ as time barred under section 95.11(8), Florida Statutes (1995), which states that actions challenging prisoner disciplinary proceedings must be brought within thirty days after the final disposition of the proceeding. Upon review, this Court held that the statute did not violate the separation of powers doctrine. The Court stated that people seeking extraordinary relief in Florida courts must comply with the general filing requirements including time restrictionsset forth in Florida Rule of Civil Procedure 1.630 (governing actions for the issuance of writs of mandamus, prohibition, quo warranto, certiorari, and habeas corpus). See id. at 268. Rule 1.630(c) provides: "A complaint shall be filed within the time provided by law." (Emphasis added.) Therefore, this Court held that the specific "time provided by law" for prisoners seeking relief from disciplinary action taken by the Department of Corrections is set forth in section 95.11(8). See 708 So.2d at 268. This Court added:

This interplay between rule 1.630 and section 95.11(8) is not anomalous and does not constitute a separation of powers violation. As a practical matter, the Court on occasion has deferred to the expertise of the legislature in implementing its rules of procedure. The setting of an interim time frame for challenging the Department's disciplinary action following the exhaustion of intra-departmental proceedings is a technical matter not outside the purview of the legislature. We do not view such action as an intrusion on this Court's jurisdiction over the practice and procedure in Florida courts.
Id. at 269 (citations omitted).
Prior to this Court's opinion in Kalway, rule 9.100, entitled "Original Proceedings," was amended to state:
(a) Applicability. This rule applies to those proceedings that invoke the jurisdiction of the courts ... for the issuance of writs of mandamus, prohibition, quo warranto, certiorari, and habeas corpus, and all writs necessary to the complete exercise of the courts' jurisdiction....
. . . .
(c) ... The following shall be filed within 30 days of rendition of the order to be reviewed:
. . . .
(4) A petition challenging an order of the Department of Corrections entered in prisoner disciplinary proceedings.
Amendments to Fla. Rules of App. Pro., 685 So.2d 773 (Fla.1996) (effective January 1, 1997). Thus, it is clear that the Court agreed with the time limitations in section 95.11 and therefore adopted a rule of procedure that was consistent with those deadlines. It is important to note that, unlike the DPRA, which poses equal protection and due process problems, there were no constitutional infirmities with the thirty-day deadline at issue in Kalway. However, we clarify our holding in Kalway in order to make it clear that this Court did not cede to the Legislature the power to control the time in which extraordinary writ actions must be commenced.
[5] The federal standard for hearing claims from prisoners in state custody is more stringent than the standard for successive motions from prisoners in federal custody. Compare 28 U.S.C.A. § 2254 (West Supp.1999) (state custody requires either new rule of constitutional law or new factual predicate and clear and convincing evidence that but for constitutional error no reasonable factfinder would have found applicant guilty of underlying offense) with id. § 2255 (successive motion requires newly discovered evidence sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found movant guilty of offense or a new rule of constitutional law). This difference in standards is understandable when one considers that the prisoner in state custody has state remedies available, including a state habeas petition, whereas the federal prisoner has only the federal postconviction process available. Thus, in those instances where the defendant has no other avenue for relief, Congress has recognized that a new rule of constitutional law warrants a successive motion and when actual innocence is asserted, it need not be premised on constitutional error. In contrast, Congress obviously intended for state prisoners' claims to be handled by the state court system and come to the federal system only in extraordinary circumstances. As the United States Supreme Court explained, "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution," and not to review questions of guilt or innocence. Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In the DPRA, the Legislature is turning the avenue of state postconviction relief into a narrow alley.
[6] We make it clear that section 119.19(2), Florida Statutes (1999), which directs the Secretary of State to establish and maintain a records repository, is not impacted by our ruling today and therefore remains in effect. Further, in accord with presently existing rule 3.852, records will continue to be produced at the records repository.
[7] In In re Rule of Criminal Procedure 3.851, 626 So.2d 198, 199 (Fla.1993), this Court stated in the Commentary that "[i]n the event the capital collateral representative is not fully funded and available to provide proper representation for all death penalty defendants, the reduction in the time period [for filing initial postconviction motions from two years to one year] would not be justified and would necessarily have to be repealed, and this Court will forthwith entertain a petition for the repeal of the rule." Adequate funding is also a prerequisite to justify the imposition of the dual-track system articulated in the rules proposed by this Court pursuant to this opinion. See Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, 3.993, No. SC96646, ___ So.2d ___, 2000 WL 381496 (Fla. Apr. 14, 2000).
[8] See supra note 1. Real-time reporting could significantly expedite the filing of the record on appeal, thereby removing one delay in the processing of capital cases.