JjMcMANUS Judge.
In this juvenile delinquency proceeding, D.P. appeals his delinquency adjudication for unauthorized entry of an inhabited dwelling. For the reasons that follow, we affirm the delinquency adjudication.
STATEMENT OF THE CASE
On June 9, 2000, the St. John the Baptist Parish District Attorney filed a petition alleging that juvenile, D.P., was delinquent based on Count 1, theft of money more than $100.00 but less than $500.00, a violation of LSA-R.S. 14:67, and Count 2,' unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3. D.P. denied the allegations on June 27, 2000. On 'August 8, 2000, the case was tried before the judge who adjudicated D.P. delinquent based on Count 2,. and not guilty on Count 1. Immediately following adjudication, the court conducted a disposition hearing and placed D.P. in the custody of the Department of Corrections for one year, but suspended that custody based on one-year active probation. On August 18, 2000, D.P. filed a motion for appeal that was granted.
FACTS[1]
C.T., age 15, testified that, on June 8, 2000, her mother, Amanda Tuircuit, left her at home. C.T., C.T.’s sister, and C.T.’s friend were sitting on the sofa. A boy knocked on the door and rang the doorbell and said he wanted to buy something. C.T.’s sister got up and looked out the door, and the boy said again that he wanted to buy something. There was testimony that the boy was accustomed to going to the house to buy freezer pops. C.T.’s sister asked to see his money. The boy showed her a dollar, and she opened the door slightly. Four boys, later identified as D.P., D.J., D.G., and J.G., pushed the door open and came inside the house. One of the boys said that he was going to leave, but first he wanted to tell his friend something. The boy told C.T.’s friend to give him her shoes and her rag, but C.T.’s friend refused. The boys tried to take her shoes off of her feet and the rag off of her head. C.T. told the boys she was going to call her mother, so all of the boys |2ran out of the house. C.T. called her mother and told her what happened. A few minutes after the boys left, C.T. noticed that her purse was missing. She noticed the missing purse before her friend left the house about an hour later. C.T. did not see any of the boys leave the house with her purse.
*564 Deputy Cleven Remondet, a road deputy with the St. John the Baptist Sheriff=s Office, testified for the state that on June 8, 2000, he responded to a call from Amanda Tuircuit, who advised him that four black males had forced their way into her home while her daughter, C.T., was present. Deputy Remondet took statements from C .T. and Ms. Tuircuit. C.T. identified juveniles, D.J. and D.P., as two of the boys who came into the house and took her purse.
D.P. testified that on June 8, 2000, he went to the Tuircuits’ home with D.J., D.G., and J.G. He stated that he knew them well and “hung around” with them a lot. One of the boys showed him money and told him he was going to buy freezer pops at the Tuircuits’ home. When they got to the house, D.G. knocked on the door, and C.T.’s sister answered it. D.G. told C.T.’s sister that he wanted to talk to C.T.’s friend, so she let him and J.G. inside the house. D.J. and D.P. stayed on the porch. C.T. started crying and said she was going to call her mother if they did not leave, so D.G. and J.G. ran out the house and through an alley. D.P. and D.J. stayed behind on the street near the house. D.P. testified that he did not take anything from the house, nor did he force himself into the house. He stated that he had no idea that D.G. and J.G. were going to do anything wrong when they got to the house. D.P. claimed that D.G. and J.G. stole the purse and split the money. He testified that he did not know why he never told the police that he did not steal the purse. D.J. testified at trial, and his testimony largely corroborated that of D.P.
ASSIGNMENT OF ERROR NUMBER ONE
As his only assignment of error, D.P. argues that the evidence was legally insufficient to adjudicate him delinquent based on violating LSA-R.S. 14:62.3, unauthorized entry of an inhabited dwelling. Specifically, he contends that the trial court erred in finding that he had the requisite intent to commit the crime.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana Lin State v. Abercrombie, 375 So.2d 1170 (La.1979). In Jackson, the court held that due process requires the reviewing court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In the instant case, D.P. was adjudicated delinquent based on violating LSA-R.S. 14:62.3, unauthorized entry of an inhabited dwelling, which provides as follows:
1. Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any . inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
LSA-R.S. 14:10 provides:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal conse- *565 quenees as reasonably certain to result from his act or failure to act.
The crime of unauthorized entry of an inhabited dwelling requires general intent.
In the instant case, C.T. testified that she, her sister, and her friend were sitting on the sofa in her mother’s home when C.T. heard a knock on the door, and a boy said that he wanted to buy something. C.T.’s sister got up and looked out the door, and the boy said again that he wanted to buy something. As stated above, there was testimony that thi§ boy was accustomed to going to the house to buy freezer pops. When the boy showed her his money, she opened the door slightly, and four boys, including D.P. and D.J., pushed the door open and came inside the house. C.T. told them she was going to call her mother, so the boys left. D.P. and D.J. testified that C.T.’s sister let D.G. and J.G. come inside the house after they knocked on the door. D.P. and D.J. claimed that they did not go inside the house.
The facts of the instant case are similar to those in State v. Armstrong, 99-925 (La.App. 5 Cir. 2/16/00), 756 So.2d 53. In Armstrong, defendant was convicted of unauthorized entry of an inhabited dwelling. On appeal, he contended that the evidence was insufficient to support his conviction, because the state failed to prove his intent to 1¿enter the Petersons’ home without authorization. Defendant argued that the evidence showed that he had been at the Petersons’ home with permission in the past, just as D.P. in the instant case argued that he and his friends had been at the Tuircuits’ home with permission in the past to buy freezer pops. In Armstrong, the Petersons testified that, although defendant had been at their home on previous occasions, he did not have permission to enter their home that night. Similarly, in the instant case C.T. testified that although D.P. and his friends had been at her home on previous occasions, they did not have permission to enter her home that night. In addition, in Armstrong, all of the state’s witnesses testified that defendant forced his way into the apartment on the day of the incident. Likewise, in the instant matter C.T. testified that D.P. and his friends forced their way into her home. The appellate court in Armstrong held that, in considering the evidence in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant intentionally entered the Petersons’ home without authorization. Armstrong, 756 So.2d at 536.
In the instant case, after hearing the testimony and evaluating the credibility of the witnesses, the judge adjudicated D.P. delinquent based on a violation of LSA-R.S. 14:62.3, unauthorized entry of an inhabited dwelling. General intent requires a showing that the offender, in the ordinary course of human experience, must have intended the consequences that were reasonably certain to follow from his act. We see no error in the finding that D.P. had the requisite general intent to enter the house. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness if believed by the court, is sufficient to support a conviction or convictions. State v. Myers, 98-899 (La.App. 5 Cir. 5/19/99), 737 So.2d 255, 260. The judge heard the testimony and found C.T. to be credible. Based on the foregoing, we find that the evidence at *566 trial was sufficient under the Jackson standard to support D.P.’s adjudication as delinquent.
| .CONCLUSION
The evidence was sufficient for a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, to conclude that D.P. had the requisite general intent to enter the Tuircuits’ home. The delinquency adjudication is affirmed.
AFFIRMED.

. Juveniles, D.J. and D.P., were both adjudicated delinquent at the same time. The companion case for D.J. is numbered 00-KA-1592.