ANSTEAD, J.,
specially concurring.
I write separately to express both a caution and an optimism about our exhaustive efforts to reform the postconviction process in death penalty jurisprudence. First, the caution to note that with today’s revisions we appear to have reached the outer limits of our authority to restrict the constitutional process under habeas corpus for catching serious mistakes in capital cases. In other words, we must be mindful that there are limits to how far we can go in restricting a capital defendant’s access to the courts to present a claim that a serious mistake was made in his conviction or capital sentence.
Indeed, in Allen v. Butterworth, 756 So.2d 52, 59 (Fla.2000), in dealing with our continuing efforts at postconviction reform, we then cautioned:
*1223 While this Court will continue such efforts, we are also mindful that our primary responsibility is to follow the law in each case and to ensure that the death penalty is fairly administered in accordance with the rule of law and both the United States and Florida Constitution.
That caution bears repeating here. The reality is that few, if any, of the numerous postconviction decisions finding major errors in capital convictions and sentences in Florida would have occurred if a strict one-year limitation had been rigidly enforced. Those decisions demonstrate that the discovery of major flaws based upon new evidence, Brady claims, or the recantations of witnesses, does not always conveniently occur in that brief time span. If fewer errors are to be found in the future let us hope that it will be because the thoroughness of the process allowed fewer errors, and not because of the expiration of an arbitrary deadline.
HABEAS CORPUS
In our response to demands to speed up the process while seemingly never being able to satisfy the competing interests, we must be constantly mindful that we are dealing with a Constitution, and an express right to the writ of habeas corpus set out therein. We must also be mindful of the fact that we are acting at a time when access to the federal courts on postconviction claims has been severely curtailed so that a proceeding in the state courts is essentially “the only game in town.” We are it.
Traditionally, postconviction rights have been asserted through use of the constitutionally guaranteed writ of habeas corpus, the Great Writ. The Great Writ has been placed in Florida’s Constitution as an ultimate safeguard against human error. Of course, there is no time limitation on the invocation of this writ, and its suspension is forbidden. However, in order to insure the orderly and efficient processing of postconviction claims under the writ of habeas corpus, we have enacted a procedural rule to guide the process. In such rule, we originally imposed a time limitation of two years for the filing of such claims, with a proper exception for certain claims that could not reasonably be discovered and advanced within the two-year period.
We have also held that counsel will be provided for indigent defendants in post-conviction proceedings only in limited instances. See Graham v. State, 372 So.2d 1363 (Fla.1979). Because of our especial concern in capital cases, however, we have consistently refused to allow a capital defendant to be executed unless that defendant was provided access to counsel-assisted postconviction proceedings. See Arvelaez v. Butterworth, 738 So.2d 326, 326 (Fla.1999) (“We acknowledge we have a constitutional responsibility to ensure the death penalty is administered in a fair, consistent and reliable manner....”). Similarly, the Legislature has provided resources to see that all capital defendants have reasonable access to counsel-assisted postconviction proceedings. As a consequence, this Court has consistently refused to delay executions where reasonable access to counsel has been provided and all reasonable claims have been considered and properly denied.
REDUCED TIME FOR CAPITAL CLAIMS
When the Legislature acted to provide counsel and resources in capital postcon-viction proceedings, this Court took the dramatic step of cutting in half the two-year time allowed for postconviction claims in capital cases. While it would not ordinarily make sense to provide less time for *1224 the most serious of cases, while providing twice the time in less serious misdemeanor and felony cases, we acted in specific reliance on the Legislature’s providing counsel in capital postconviction proceedings. At the same time, however, we openly cautioned that because our reduction of the time for filing claims was expressly premised on the provision of competent counsel with adequate resources, we would have to reconsider this decision if adequate resources were not provided. See Fla. R.Crim. P. 3.851 Court Commentary (1993) (“In the event the capital collateral representative is not fully funded and available to provide proper representation for all death penalty defendants, the reduction in the time period [for seeking relief under this rule] would not be justified and would necessarily have to be repealed, and this Court will forthwith entertain a petition for the repeal of the rule.”). Since that time we have worked constantly and diligently, with the assistance of the Legislature, to see that a fair and efficient, and adequately resourced, system for capital postconviction proceedings is put in place. Today’s revisions are the culmination of those efforts.
ESSENTIAL INGREDIENTS AND VIGILANCE
Despite concerns about our limitations on habeas corpus, there is also considerable cause for optimism in considering how far we have come with the help of the Legislature in providing a fair process and adequate resources for capital postconviction proceedings. For example, it appears that a consensus has now been reached among all those involved as to certain essential ingredients without which a fair and efficient system for capital postconviction proceedings cannot survive. It is critically important that all now are vigilant in seeing that these essential prerequisites are assured in every capital postconviction proceeding:
First, as this Court has recognized for many years, it is essential that a capital defendant facing execution be promptly provided with competent postconviction counsel who shall be charged with the responsibility of investigating the facts and circumstances of the case, and researching the law, in order to determine the existence of any legal reasons why the defendant’s conviction or sentence should be set aside.
Second, postconviction counsel must be provided with reasonable time and adequate resources to carry out her responsibilities.
Third, postconviction counsel must have timely access to all information, including especially public records from investigating and prosecuting agencies, concerning the case.
Fourth, there must be active and reasonable judicial oversight of the proceedings to see that the claims are fairly and efficiently processed in a postconviction proceeding.
By our vigilance in paying strict attention to these four essential prerequisites, confidence in the outcome of postconviction proceedings should be assured. On the other hand, neglect of any of the four will surely place the proceedings at risk.
We must never lose sight of the important values being balanced in death penalty proceedings. On the one hand society has invoked the ultimate sanction of death because an innocent life has been taken by the defendant under especially egregious circumstances. On the other hand that same society cautions that “death is different” and extraordinary safeguards must be taken to insure that only those whose guilt is certain and that are truly deserving of the forfeiture of life are ultimately put to *1225 death. We in the courts have the major responsibility for insuring that these values are properly reflected and balanced in our procedures and oversight of the death penalty process.
As noted above, there is much reason for optimism. Counsel and resources are now available institutionally and through court-appointment, and public records discovery has been organized in a coherent and efficient manner. In addition, the Legislature, in enacting legislation for DNA testing, has sent out a strong signal that all available safeguards should be utilized to insure that no one who may be innocent of the crime or not deserving of the punishment be executed. All involved must now pull together to insure the system works and strikes the proper balance.
SHAW and PARIENTE, JJ., concur.