591 So.2d 614 (1992)
James J. HAAG, Petitioner,
v.
STATE of Florida, Respondent.
No. 77132.
Supreme Court of Florida.
January 2, 1992.
*615 James J. Haag, in pro. per.
Nancy A. Daniels, Public Defender, Second Judicial Circuit, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen., Joan Fowler, Sr. Asst. Atty. Gen., Chief, Crim. Law, and Patricia G. Lampert, Asst. Atty. Gen., West Palm Beach, for respondent.
Richard A. Belz, Executive Director, Gainesville, amicus curiae, for Florida Institutional Legal Services, Inc.
KOGAN, Justice.
We have for review Haag v. State, 570 So.2d 1145 (Fla. 4th DCA 1990), in which the district court certified the following question of great public importance:
Does the rule 3.850 provision which states that with certain exceptions "no other motion shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final" prevent consideration of such a motion which was turned over to prison authorities for mailing within the prescribed time limit but was stamped in by the court clerk after that time period had run?
Id. at 1145. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and quash the decision below.
While incarcerated in Union Correctional facility, James J. Haag deposited in the outgoing prisoner mail a pro se motion for postconviction relief pursuant to Florida *616 Rule of Criminal Procedure 3.850.[1] He did so five days prior to the expiration of the two-year time limit imposed by the rule  a date reliably documented in the prison's mail log. Although there is no direct evidence of the date on which petitioner's motion was received at the court, it was not stamped "filed" by the clerk of court until four days after the time limit had run. Later, the trial court denied the motion as untimely. The district court affirmed and then certified the above question. Haag, 570 So.2d at 1145.
A basic guarantee of Florida law is that the right to relief through the writ of habeas corpus must be "grantable of right, freely and without cost." Art. I, § 13, Fla. Const. In the case of State v. Bolyea, 520 So.2d 562, 563 (Fla. 1988), we recognized that Rule 3.850 is a "procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus." Accordingly, in approaching the present case, we must be mindful that the right to habeas relief protected by article I, section 13 of the Florida Constitution is implicated here.
It is true that the right to habeas relief, like any other constitutional right, is subject to certain reasonable limitations consistent with the full and fair exercise of the right. For example, we have noted that the two-year time limitation imposed by Rule 3.850 serves to promote the fairness and finality required of our criminal justice system:
It serves to reduce piecemeal litigation and the assertion of stale claims while at the same time preserves the right to unlimited access to the courts where there is newly discovered evidence or where there have been fundamental constitutional changes in the law with retroactive application.
Johnson v. State, 536 So.2d 1009, 1011 (Fla. 1988). Accord art. I, § 21, Fla. Const. (right of access to courts). However, nothing in our law suggests that the two-year limitation must be applied harshly or contrary to fundamental principles of fairness. As the Rules of Criminal Procedure themselves note, the Rules are
intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure and fairness in administration.
Fla.R.Crim.P. 3.020 (West 1991).
Indeed, both simplicity and fairness are equally promoted by the right to habeas relief that emanates from the Florida Constitution and has been partially embodied within Rule 3.850. Art. I, § 13, Fla. Const.; Bolyea, 520 So.2d at 563; Fla.R.Crim.P. 3.850. The fundamental guarantees enumerated in Florida's Declaration of Rights should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality. Art. I, Fla. Const.
With these principles in mind, we turn to the method by which the United States Supreme Court has addressed the problem of the timeliness of pro se habeas petitions or appeals by federal inmates. The high Court has noted:
[P]risoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal ... before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation.
*617 Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988). The Court went on to note that the pro se prisoner is unable to do anything but trust the prison officials and court clerks to process the petition in a timely manner. If they betray this trust either wilfully or through neglect, the prisoner usually is unable even to prove who is at fault. Id. 108 S.Ct. at 2383. By default, then, the prisoner loses.
Finding this state of affairs fundamentally unfair, the United States Supreme Court held that a "mailbox rule" applies in this context. Under the mailbox rule, a petition or notice of appeal filed by a pro se inmate is deemed filed at the moment in time when the inmate loses control over the document by entrusting its further delivery or processing to agents of the state. Usually, this point occurs when the inmate places the document in the hands of prison officials. Id. at 2384. The United States Supreme Court noted that, because of the logging of prisoners' mail, this point in time can be reliably documented.[2] The Court eschewed using other points in time such as the date of delivery to the clerk's office, which could raise troubling factual problems about misdelivered mail, neglect by prison officials, or delay in stamping the document once received by the clerk of the court. Id. at 2385.
We find the approach taken by the Court in Houston to be most consistent with the simplicity and fairness demanded both by the Florida Rules of Criminal Procedure and article I, section 13 of the Florida Constitution. Rule 3.850 says that a person has two years to file the motion, and a full two years it must be. The state cannot subtract from that two-year period through the failure to deliver a pro se inmate's petition until after the period has expired, even if the delay is through honest oversight. Accordingly, we hold that the mailbox rule exists as a matter of Florida law.[3] Art. I, § 13, Fla. Const.; Fla.R.Crim.P. 3.850. We caution, however, that this rule applies only to pro se petitioners who are incarcerated. Other litigants who have means of controlling the delivery of documents to the courthouse will continue to be subject to the traditional rules.
We also note that this mailbox rule will prevent yet another problem implicating constitutional rights. Under the Florida Constitution, all persons have a right to equal protection of the laws, particularly in matters affecting life and liberty. Art. I, § 2, Fla. Const. Obviously, this includes a right of equal access to the courts, which serve as the final arbiter of whether life or liberty may be forfeited lawfully. Compare id. with art. I, § 21, Fla. Const.
A rule other than the mailbox rule would interject a level of arbitrariness that could undermine equal protection and equal access to the courts. For example, two pro se inmates who delivered a document to prison officials at the same time, seeking the same relief, and facing the same court deadline, could be treated quite differently based entirely on happenstance. One inmate's petition might make it to the courthouse on time, while the other's might be delayed for unknown reasons. The first would obtain a full hearing, while the second would be denied relief. Such arbitrariness cannot fairly be characterized either as equal protection or equal access to the courts, and it therefore cannot be allowed. Art. I, §§ 2, 21, Fla. Const.
We recognize that our opinion today recedes from and overrules earlier precedent in this jurisdiction. The opinions of the district courts in Lindsay v. State, 579 So.2d 350 (Fla. 1st DCA 1991), Ruggirello v. State, 566 So.2d 30 (Fla. 4th DCA), review dismissed, 569 So.2d 1280 (Fla. 1990), Clifford v. State, 513 So.2d 772 (Fla. 2d DCA 1987), and Tucker v. Wainwright, 235 So.2d 38 (Fla. 2d DCA 1970), contain results *618 or analyses inconsistent with our views and accordingly are disapproved to the extent that they conflict with this opinion. We also are receding from Walker v. Wainwright, 303 So.2d 321 (Fla. 1974), and State ex rel. Ervin v. Smith, 160 So.2d 518 (Fla. 1964), to the extent they conflict with the views expressed above.
While the doctrine of stare decisis normally would require a greater deference to this prior precedent, we find that the demands of justice and the principles of constitutional law recited above require an alteration in the precedent. As is self-evident, even the common law must bend before the dictates of the Florida Constitution. Not even the hoariest precedent is permitted to violate the guarantees of habeas relief, equal protection, and equal access to the courts, or any of the other fundamental rights set forth in the Declaration of Rights. Art. I, Fla. Const.
Moreover, as we have said before, stare decisis is not an ironclad and unwavering rule that the present always must bend to the voice of the past, however outmoded or meaningless that voice may have become. It is a rule that precedent must be followed except when departure is necessary to vindicate other principles of law or to remedy continued injustice. McGregor v. Provident Trust Co., 119 Fla. 718, 162 So. 323 (1935). We find that the guarantees embodied in Florida's Declaration of Rights are best vindicated by overruling the contrary precedent noted above.
For the foregoing reasons, the opinion below is quashed and this cause is remanded for further proceedings consistent with the views expressed above.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
NOTES
[1] The rule states in pertinent part:

No other motion [for postconviction relief] shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final unless it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
Fla.R.Crim.P. 3.850. Neither of the exceptions is applicable to the present case.
[2] The facts in the record indicate that a similar logging procedure is done in Florida prisons.
[3] Unless it appears on the face of the pleading that it was timely received by the prison officials, our opinion does not mean that the court must inquire into whether every late-filed pro se petition meets the test of the mailbox rule. Upon denial of the petition, the burden is on the pro se inmate to timely assert and prove that the petition was delivered to prison authorities within the requisite time limits.