FARMER, C.J.,
dissenting.
The issue is whether a notice of appeal was filed within the time required by rule. See Fla. R.App. P. 9.110(b) (“Jurisdiction of the court under this rule shall be invoked by filing ... a notice ... with the clerk ... within 30 days of rendition of the order to be reviewed.”). If the notice is not deemed timely, we must decide whether the appeal should be dismissed.
Appellant is a parent appealing a final order changing visitation and holding her in contempt for unreasonably denying the fathers summer vacation with their child. This mother now lives in West Virginia. Although the trial on the post judgment modification/contempt proceeding was held in Palm Beach County, she participated only by telephone from West Virginia and without counsel.[1] The final order is deemed rendered on April 5th.
To our order to show cause why we should not dismiss her appeal as untimely, she responded with a personal statement (not under oath), attaching copies of documents relating to the mailing of her notice of appeal to the trial court. Her statement recounts that on May 4th she gave her notice of appeal to the U.S. Postal Service (USPS) in West Virginia, addressed to the Delray Beach satellite courthouse (presumably where the trial judge is situated), prepaying the standard fee of $13.65 for an “Express Mail,” or overnight delivery. She says that the USPS marked the express mail for “second day” delivery instead of overnight. This was done, she says, in a section of the express mail form that is filled out by the USPS clerk, not by the sender. She asserts that the clerk never told her that he was marking the item for a second day delivery instead of an overnight. She presumes this was an honest mistake on his part, but that in any case she was not aware of it.
She admits that she knew the document had to reach the court in Florida by May 5th. She points out that the express mail form shows that she mailed the item at 1:48 p.m. on May 4th. She explains:
“If I had known that my appeal would not be sent as a “Next Day ” [e.s.], as I paid for ... I had plenty of time to take it to Federal Express or any other overnight business to handle it for me.”
*89 She also states that she telephoned the USPS tracking number on the form and learned that the mailing was delivered in Delray Beach on May 5th at 12:47 p.m.
USPS offers an internet “track and confirm” program, so that mailers may ascertain delivery status for their mail. See United States Postal Service, at http:// www.usps.com. A check of the item number shown on the USPS express mail receipt attached to appellants statement yields the following information: “Your item arrived at 12:47 pm on May 05, 2004 in DELRAY BEACH, FL 33444. No further information is available for this item.” This is business record evidence that USPS delivered the document to the courthouse in Delray Beach on May 5th, not long past noon. A delivery before 1:00 pm should make the notice timely filed.
The papers prepared by the trial court Clerks office do not confirm this delivery, but they do not contradict it either. To be sure, the notice was sent to the Circuit Courts satellite courthouse in Delray Beach, rather than its main courthouse in West Palm Beach. I do not know whether appeals are processed in satellite courthouses in the Fifteenth Circuit, but I suspect they are sent to the main facility for such handling. In this instance, the Clerks stamp on the document (also not under oath or seal), shows a date of May 7th, suggesting that the document may not have been stamped in until it reached the appeals clerk at the main courthouse. Otherwise nothing in the few papers we have would explain why a document reaching one of the outlying courthouses on May 5th would bear a date stamp of May 7th.
The majority deems the notice untimely, and I cannot say that their conclusion is irrational, given the filing stamp. Nonetheless, it is a conclusion reached without a formal fact-finding hearing. As an appellate court, we do not hold evidentiary hearings. But the conclusion of the majority does seem contradicted with what we know from the publicly accessible business records of USPS. We could remand the case to the trial court to hold an evidentiary hearing and determine precisely when appellants notice of appeal actually reached the courthouse. That would require the personal presence of appellant before the trial judge, something she was unable to accomplish even at trial on the post judgment modification, contempt proceeding. In the end, even a trial court determination would very likely be made largely on documentary evidence rather than personal credibility.
Therefore if we are going to do the fact finding in this court on the basis of documents only, in my opinion the evidence preponderates in her favor. I would find that this notice of appeal actually reached the Delray Beach courthouse timely on May 5th, that in all probability it was not file-stamped by the Clerk until two days later because of the delay in forwarding it to the main courthouse in West Palm Beach, and that in consequence it may have been mislaid or was buried in the flow of everyday paper work.
If the majority’s factual conclusion stands, however, it suggests a pertinent legal issue not addressed in their opinion. The justification for dismissing her appeal would be that the legal rule on the time for filing is inflexible, unalterably requiring that all notices of appeal be received and stamped by the Clerk within the 30 days. If that were the actual rule, it would be sensibly consistent to hold this notice of appeal untimely. But if the law does not uncompromisingly apply a rigid rule that every mailing of a notice of appeal within 30 days of rendition but not actually reaching the court within the 30-day period is untimely, then a dismissal may not be so clearly mandated.
*90 In spite of the clear text of what appears to be an unbending rule, Judges have carved out a mail box exception[2] to the time requirement. Applying that exception, the courts have relieved some parties from the rigid requirement that all notices actually reach the court before the end of the prescribed deadline. In Haag v. State, 591 So.2d 614 (Fla.1992), the court adopted a mail box exception to the time requirements for filing post conviction relief motions in criminal cases, construing the rule 3.850(b) provision that “[n]o other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case.... ” Fla. R.Crim. P. 3.850(b).
The Haag exception was created by judges in spite of the clarity of the rule’s text because of a specific constitutional compulsion they thought should override its rigidity. Haag reasoned that post conviction relief under rule 8.850 “is a ‘procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus.’ ” 591 So.2d at 616. As regards rule 3.850’s two-year time limit to seek such relief, the court noted:
“[Pjrisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal ... before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped ‘filed’ or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk’s process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation.”
591 So.2d at 616 (quoting Houston v. Lack, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). In justifying an exception to the timeliness requirement, the court explained:
“[Njothing in our law suggests that the two-year limitation must be applied harshly or contrary to fundamental principles of fairness.... The fundamental guarantees enumerated in Florida’s Declaration of Rights should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality ... Rule 3.850 says that a person has two years to file the motion, and a full two years it must be. The state cannot subtract from that two-year period through the failure to deliver a pro se inmate’s petition until after the period has expired, even if the delay is through honest oversight. Accordingly, we hold that the mailbox rule exists as a matter of Florida law.”
591 So.2d at 616-17. Later the court added:
“We also note that this mailbox rule will prevent yet another problem implicating constitutional rights. Under the Florida Constitution, all persons have a right to equal protection of the laws, particularly in matters affecting life and liberty. *91 Art. I, 2, Fla. Const. Obviously, this includes a right of equal access to the courts, which serve as the final arbiter of whether life or liberty may be forfeited lawfully. Compare id. with art. I, 21, Fla. Const_ Not even the hoariest precedent is permitted to violate the guarantees of habeas relief, equal protection, and equal access to the courts, or any of the other fundamental rights set forth in the Declaration of Rights. Art. I, Fla. Const.” [e.s.]
591 So.2d at 617, 618. In short, the court thought it constitutionally dubious to deny as untimely a proper claim of illegal confinement that had at least been timely placed for mailing.
The problem is that the Haag mail box exception has not been confined to cases involving only the essential rationale for its adoption — habeas corpus and claims of illegal confinement. In Wimbush v. Pasco County Sheriffs Office, 829 So.2d 296 (Fla. 2d DCA 2002), for example, the court applied the rule in a prisoner’s common law replevin action. Martin v. Dep’t of Revenue ex rel. Martin, 827 So.2d 367 (Fla. 2d DCA 2002), applied the exception in an action having to do with the nonpayment of child support and a report of the incarcerated father’s default to the credit bureau. Even the supreme court itself has applied the mail box exception in a prisoner’s civil rights complaint against prison officials for allegedly filing false disciplinary reports against him. Griffin v. Sistuenck, 816 So.2d 600 (Fla.2002). None of these decisions involve a claim of illegal confinement, and all of them involve ordinary civil claims. These holdings thus suggest that the mail box exception is as strongly based on the constitutional right of access to the courts as it is on the right to habeas corpus.
Martin involves nonpayment of child support, a subject indistinguishable from visitation and custody, the subject of appellant’s case. Once the courts ventured outside of illegal confinement cases to apply the Haag exception in ordinary civil litigation, there is not much reason to refuse to apply it in any civil case where an appellant acting seasonably is forced to entrust delivery and handling to someone else and her attempt is spoiled by circumstances beyond her control. Hence I do not think we should ask whether this particular rigid rule of timely filing can be breached in non-criminal, non-confinement cases by judicial interpretation — clearly that breach has already been made. Instead I think we should consider why the class of litigants involved in today’s case should not be allowed to reap the benefit of the judicial magnanimity created by that breach.
I think the circumstances here counsel against the application of a rigid rule. The importance of the right of access to the courts is just as crucial to parents in broken families as it is to prisoners claiming their conviction is constitutionally invalid. The Haag exception addresses the circumstance where, on account of circumstances over which a litigant may have no control, an appellant “cannot personally travel to the courthouse to see that the notice is stamped ‘filed’ or to establish the date on which the court received the notice” and is therefore compelled to entrust the filing to another.
In at least the only sense that matters, appellant stands functionally in the same predicament as any prisoner involved in ordinary civil litigation. She now lives in West Virginia and quite literally “cannot personally travel to the courthouse to see that the notice is stamped ‘filed’ or to establish the date on which the court received the notice.” 591 So.2d at 616. We know from appellate records repeated over years, that people are often compelled by *92 circumstances after a divorce to relocate, yet they continue to be subject to the jurisdiction of the divorce court in Florida for purposes of post judgment enforcement or modification of the final decree. The difficulties thereby created are just as true for an in-state resident forced to move from southeast Florida to the panhandle, or vice versa.
We do not require an evidentiary hearing to teach us that many former marital partners and parents may be no less imprisoned by economics and issues of child or elder care, or other circumstances in a far-away place, yet may still be bound to the Florida court. Moreover, the issues they may be compelled to litigate in Florida — child custody and support, parental duties — are as important to society and families in their way as questions of illegal confinement are to prisoners. A parent’s right of access to the courts to challenge the loss or change in her custodial rights is no less dear than the prisoner’s claim to release from his prison.
We place a justifiably high regard on parental rights and duties with regard to the custody, support and visitation of children. Cf. Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (“[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.”); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (recognizing fundamental liberty interest of natural parents in the care, custody, and management of their child); Fla. Dep’t of Children and Families v. F.L., 2004 WL 1516017 *3, 880 So.2d 602 (Fla. July 8, 2004) (“When a statute impinges on a fundamental liberty interest, we analyze the statute’s constitutionality under a strict scrutiny standard. Parents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children.”); J.B. v. Fla. Dep’t of Children and Family Servs., 768 So.2d 1060, 1064 (Fla.2000) (significance of parental rights cannot be overstated; parent’s right to companionship, care, custody, and management of children is interest far more precious than any property right). As our supreme court has only recently emphasized:
‘We also stress the importance of embracing methods of resolving disputes that do not cause additional emotional harm to the children and families who are required to interact with the judicial system.”
In re Report of the Family Court Steering Committee, 794 So.2d 518, 519-20 (Fla.2001).
Thus, like the convicted felon serving time who is forced to entrust the handling of his papers to prison officials, this parent was just as compelled to entrust her appeal to the vagaries of the mail and a distant Clerk’s procedures for handling and time-stamping incoming papers. See Haag, 591 So.2d at 616. We have not yet recognized this mail box exception for unrepresented citizens, who pay taxes and have been convicted of no crime, but who are also physically unable to hand deliver their notices directly to the court, or to supervise their delivery. For me the real question is therefore whether we should grant the same indulgence to ordinary citizens in like circumstances that we have given to prisoners.
With the majority’s factual conclusion that her notice did not reach the courthouse within the 30 days, this seems to me to be the case to consider that issue. I would give her at least the same consideration we give prisoners and deem her notice filed when she delivered it to the *93 USPS before the expiration of her time to appeal. Applying the mail box exception, I would find her notice of appeal timely.

. I have no idea whether she could not afford an attorney or simply could not find one. It should not matter in these child.custody and visitation cases why a parent has no attorney, because the system of justice should facilitate the consideration of such matters.

. I recognize that this is usually referred to as the "mail box rule." See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (twice referring to the mail box "rule"); Haag v. State, 591 So.2d 614, 617 (Fla.1992) (holding that mail box "rule” exists as a matter of Florida law). This is an unfortunate usage for Judges. The actual rule involved here is the one setting the time requirement — in this case rule 9.110. The dispensation granted by Judges from that rules requirements is quite obviously an exception or indulgence. Referring to this exception as a rule leads to an uncritical acceptance of it as a rule with all the attributes flowing from that conclusion. Soon the cases begin to treat it so. I refuse to do so.