PARIENTE, J.,
specially concurring.
I fully concur in the majority’s conclusion that neither the Jimmy Ryce Act (Act) nor the Constitution requires the type of treatment Morel seeks as a non-committed detainee. I also agree with the majority that because Morel and his attorney have been the driving force behind his extended pretrial delay, relief is not warranted under the facts of this case. However, going forward, we cannot and should not tolerate inordinate delays in bringing Jimmy Ryce respondents to trial when, during that delay, the respondent remains in legal limbo as a precommitted detainee — even where the respondent agrees with or asks for the delay.
To put this case in context, Jimmy Ryce respondents are individuals who have completed their criminal sentences, and, but for the Act, would have had the right to be released from the State’s custody and control. If either the court or a jury finds the respondent to be a sexually violent predator, then he or she cannot be released until there is a subsequent determination made by the court that his or her “mental abnormality or personality disorder has so changed that it is safe for the person to be at large.” § 894.917(2), Fla. Stat. (2011). Conversely, if the respondent is not found to be a sexually violent predator, then he or she has a right to immediate release. Keeping an individual detained for years and years without ever bringing him or her to trial offends basic notions of due process. We would not tolerate such delay in a criminal case, and we should not tolerate it in a Jimmy Ryce case. Both the Legislature and this Court have made clear that these trials should occur expeditiously.
Currently, the Department of Children and Family Services (DCF) houses detained and committed residents in what has been termed a $62-million, “state-of-the-art facility” that opened in April 2009. Concerns about the adequacy of the sexual offender treatment program — one of the cornerstones of the Act — were apparently addressed and resolved after a class action lawsuit was brought and settled in federal court. As of February 2011, DCF’s facility housed 668 residents, 386 of whom were committed and consenting to treatment (a 77% participation rate) and 159 of whom were pretrial detainees. The treatment provider, who contracts with DCF, receives $100 per day for all residents, regardless of whether those residents are detained or committed. This costs the State over $36,000 per resident, per year, or, when based on 663 residents, an approximate cost of almost $24 million per year.
Since the inception of the Act, 700 individuals have been released from detention. Interestingly, just thirty-two residents have actually completed all four phases of the sexual offender treatment program, and of those thirty-two, only eighteen have received a letter of maximum therapeutic benefit. Therefore, it would appear that the vast majority of Jimmy Ryce respondents who have been released have done so not through successfully completing the four-phase treatment regimen, but by prevailing at trial, obtaining a court-ordered release with stipulated conditions, receiving a trial court determination that they no *249 longer meet the criteria of being a sexually violent predator, or returning to prison.
In addition to highlighting how this state’s system for the civil commitment of sexually violent predators is currently functioning, I write separately because our resolution of Morel’s case does not fully resolve the Second District’s concerns that originally brought the case before this Court. As the Second District explained when certifying the Twelfth Judicial Circuit Court’s judgment to this Court:
This case is an extreme example, but from our anecdotal experience, it is not unique. The statute contemplates that detainees will receive a speedy trial and then will receive annual reviews. § 394.918, Fla. Stat. (1999-2010). Once the right to the thirty-day trial is waived, however, these proceedings often seem to take many years. The fact that the detainee is being held sometimes hundreds of miles from the trial forum does not facilitate timely resolution of these cases. If [DCF] is not providing treatment during this delay, a pretrial detainee may not actually hold the keys to the cell in which he is civilly detained.
In re Commitment of Morel, 67 So.3d 1062, 1064 (Fla. 2d DCA 2010) (footnotes omitted). This observation raises two additional issues.
The first issue relates to whether the Twelfth Judicial Circuit, where both DeSo-to County and the Florida Civil Commitment Center (FCCC) are located, continues to be the appropriate jurisdiction for all noncommitted detainees to file habeas petitions that raise challenges to protracted pretrial delay. To resolve this problem, I would recede from Murray v. Regier, 872 So.2d 217 (Fla.2002), to the extent that Murray precludes a Jimmy Ryce respondent from filing a habeas petition challenging the failure of his or her trial to progress in the circuit where his or her commitment trial is pending; I would adopt Justice Quince’s dissenting opinion in that case.
The second issue relates to whether Florida’s circuit courts, which handle Jimmy Ryce proceedings, have instituted proper procedures in order to sufficiently minimize the need for such challenges. To address this issue, I would require all trial judges who have Jimmy Ryce respondents awaiting trial to hold monthly status hearings after the expiration of the 120-day outer time limit for trial to ensure that any further delays are necessary only to prevent a manifest injustice.
I first address my concern about where jurisdiction lies for the purpose of habeas petitions that specifically challenge aspects of pretrial delay during ongoing civil commitment proceedings. As the Second District observed, a petition to establish the State’s right to detain an individual must be filed in the circuit where the individual was last convicted of a sexually violent offense. See §§ 394.913(2), 394.9135(3), Fla. Stat. (2002). The FCCC, which is the State’s primary facility for housing persons who are awaiting civil commitment trials under the Act, has only one location, in DeSoto County within the jurisdiction of the Twelfth Judicial Circuit Court. Because the offenses qualifying a defendant for commitment under the Act occur throughout the state of Florida, “it is not unusual for ... the circuit court in DeSoto County ... to have no territorial jurisdiction over the forum in which the civil proceeding is pending.” In re Commitment of Morel, 67 So.3d at 1063. Despite the Twelfth Judicial Circuit Court’s lack of territorial jurisdiction, the Second District noted that detainees nevertheless call upon that court to take steps “to regulate or issue orders to other circuit courts throughout the State concerning petitions *250 pending in those other circuits.” Id. at 1064.
This procedural quirk originates from the Legislature’s creation of a bifurcated system for the civil commitment of sexually violent predators. Under the Act, the State Attorney and the respondent are both parties to a commitment proceeding that takes place in the circuit where the Jimmy Ryce respondent was last convicted of a sexually violent offense. See generally §§ 394.913(2)-(3), 394.9135(3), 394.914, 394.916(5), Fla. Stat. (2011). Of course, issues that stem from the commitment proceeding in general, such as complaints about the failure of a trial to progress, should be raised in the circuit court where that proceeding is pending — as this is the court that has jurisdiction with the power to act.
DCF, on the other hand, is not a party to the actual commitment proceeding, but, by statute, is the entity that retains legal custody of the respondent after a probable cause determination has been made and while the respondent awaits trial. See § 394.915(1), Fla. Stat. (2011) (“If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person’s incarcerative sentence expires.”). But see State Dep’t of Children & Family Servs. v. Jackson, 790 So.2d 535, 537 n. 3 (Fla. 2d DCA 2001) (“As the entity responsible for operating the facilities that house those detained under the Act, DCF has an interest in the proceedings.”). Once a respondent is adjudicated as a sexually violent predator, the respondent’s original commitment proceeding concludes, and DCF is then charged with his or her long-term control, care, and treatment. See § 394.917(2), Fla. Stat. (2011). Issues concerning the conditions of confinement, such as those that relate to the adequacy of DCF’s treatment regimen or facilities, are outside the scope of both the commitment proceeding and the State Attorney’s role.
Prior to 2002, Jimmy Ryce respondents lacked a statutory remedy for challenging the conditions of their confinement as established by DCF. That changed in 2002, when the Legislature added section 394.9215, Florida Statutes, to the Act, providing respondents with an avenue for raising confinement issues through habeas corpus. See ch.2002-36, § 1, Laws of Fla. Pursuant' to section 394.9215(1), Florida Statutes (2011), a respondent held in one of DCF’s secure facilities is authorized to file a petition for habeas corpus alleging that the “conditions of confinement violate a statutory right under state law or a constitutional right under the State Constitution or the United States Constitution.” Respondents must file these petitions in the circuit court for the county in which the facility is located. See § 394.9215(l)(a), Fla. Stat. (2011). Since DCF currently houses all detainees awaiting trial at the FCCC in DeSoto County, the practical application of this provision means that habeas petitions brought by detainees under section 394.9215 must be filed in the Twelfth Judicial Circuit Court.
The terms of 394.9215, which are clearly directed at redressing the wrongs DCF commits while a respondent is in that entity’s custody, simply cannot apply to challenges to the commitment proceeding itself, such as in a case where a respondent complains about the failure of his or her commitment trial to progress in a timely manner. DCF is not a party to the actual commitment proceeding and would presumably lack any control over the proceeding or knowledge of the reasons for the delay. Accordingly, Jimmy Ryce respondents who seek to raise constitutional chai- *251 lenges to the delay in being brought to trial and request release from custody as a remedy must seek relief under the traditional principles of habeas corpus. See Bush v. State, 945 So.2d 1207, 1210 (Fla.2006) (“[I]f the prisoner alleges entitlement to immediate release, a petition for writ of habeas corpus is the proper remedy.”). That is, respondents wishing to challenge pretrial delay should not be confined by the terms of section 394.9215, which only dictates where habeas petitions must be filed when asserting a challenge to the conditions of the detainee’s confinement.
Without referring to section 394.9215, which was newly enacted at the time, this Court in Murray, 872 So.2d at 221-22, recognized that habeas corpus is the proper method for challenging the legality of pretrial detention under the Act. In that case, while awaiting his Jimmy Ryce trial in Miami-Dade County, which is within the jurisdiction of the Third District Court of Appeal, petitioner Murray was being detained in a state treatment center located within the jurisdiction of the Fourth District Court of Appeal. Id. at 219. During his detention, Murray filed a petition for a writ of habeas corpus in the Fourth District seeking his pretrial release from the treatment center based upon an alleged violation of his constitutional right to due process. Id. at 219-20. Initially, the Fourth District concluded that it did not have jurisdiction over the circuit court that ordered Murray’s pretrial detention and transferred the habeas petition to the Third District. Id. at 220. The Third District concluded that it lacked jurisdiction over the habeas petition because Murray was not confined in the court’s territorial jurisdiction and transferred the petition back to the Fourth District. Id. Upon receipt of the transfer, the Fourth District again dismissed the petition, holding that it did not have jurisdiction. Id.
On review, this Court quashed the Fourth District’s decision, reasoning that a “detainee should not be foreclosed from raising a constitutional claim pretrial if the resolution of that claim could end a lengthy pretrial detention” because “the traditional purpose of the writ of habeas corpus is to furnish a speedy hearing and remedy to one whose liberty is unlawfully restrained.” Id. at 222. Relying on statements made in a prior decision, this Court further recognized that although “the right to habeas relief ‘is subject to certain reasonable limitations consistent with [its] full and fair exercise,’ it ‘should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality.’ ” Id. at 221 (quoting Haag v. State, 591 So.2d 614, 616 (Fla.1992)). The Court held that “[b]ecause Murray [was] being detained in the territorial jurisdiction of the Fourth District Court of Appeal and he rais[ed] constitutional issues regarding his detention, the Fourth District Court was the proper court to rule upon his petition for habeas corpus.” Id. at 222-23.
Justice Quince dissented, concluding that because the Third District was the district court with appellate jurisdiction over the circuit court for Miami-Dade County that entered Murray’s order of confinement, the Third District had jurisdiction to resolve his pretrial habeas petition. See id. at 224 (Quince, J., dissenting). In reaching this conclusion, Justice Quince analogized Murray’s pretrial habe-as challenge to a criminal defendant’s challenge for postconviction relief. Id. at 225. Justice Quince noted that before this Court’s adoption of the prior version of Florida Rule of Criminal Procedure 3.850, criminal defendants were required to file *252 petitions for writ of habeas corpus in the county where they were incarcerated. Id. Under the new rules of criminal procedure, however, a defendant is required to file a motion for postconviction relief in the same court that imposed the judgment or sentence that the defendant is collaterally attacking because that court “is considered the ‘best equipped’ to consider that defendant’s collateral attack.” Id. For these same reasons, Justice Quince explained, this Court should also have required a Jimmy Ryce respondent “to seek habeas relief in the appellate court having territorial jurisdiction over the circuit court that issued an order of confinement or commitment.” Id. In her view, requiring a respondent to seek habeas relief challenging confinement in the jurisdiction where he or she is confined would “put an unfair burden on those jurisdictions where such facilities are -located, as in the case of Jimmy Ryce Act confinements, because most of the individuals are confined in one facility.” Id. at 225-26.
The majority’s bottom-line conclusion in Murray was that the location where an individual is being detained under the Act is the location where jurisdiction lies for the purpose of bringing a habeas petition raising a constitutional challenge to confinement prior to trial. It follows then that because the facility’s location is situated in the proper jurisdiction, a detained individual must file a habeas petition in that venue. In my view, however, the analogy Justice Quince drew in her dissenting opinion in Murray applies with equal force to situations where, as here, an individual wishes to challenge the failure of his or her trial to progress in a timely manner.
One need not look beyond the facts of this case for support of this conclusion. When certifying the Twelfth Judicial Circuit Court’s judgment to this Court, the Second District observed that it had virtually no record information about the causes of delay in this case, that it did not even know the name of the attorney representing Morel in Broward County, and that it did not see how this matter could be fairly resolved for all parties without a hearing involving the circuit court in Bro-ward County. See In re Commitment of Morel, 67 So.3d at 1063-64. After accepting jurisdiction, a majority of this Court agreed with the Second District and decided to relinquish jurisdiction to the circuit court in Broward County as the “most appropriate forum” to hear the issues raised by Morel’s continued detention. Morel v. Sheldon, 59 So.3d 1082, 1083 (Fla.2011). As with postconviction challenges raised by criminal defendants, authorizing an individual civilly detained under the Act to file a habeas petition challenging the constitutionality of lengthy pretrial delay in the circuit where his or her commitment trial is pending is not only logical, but would also serve to simplify and expedite the process. Indeed, that court would appear to be the only court with the power to remove any impediments to the expeditious resolution of a Jimmy Ryce proceeding pending there.
I acknowledge that the holding in Murray complies with the rule of law that a petition for a writ of habeas corpus should be filed in the circuit where the individual is being detained, since a circuit outside of that territorial jurisdiction generally lacks the authority to rule upon the petition. See Alachua Reg’l Juvenile Det. Ctr. v. T.O., 684 So.2d 814, 816 (Fla.1996) (“If a prisoner files a habeas corpus petition in circuit court, the petition must be filed in the circuit court of the county in which the prisoner is detained.”); Torres v. State, 700 So.2d 1247, 1248 (Fla. 5th DCA 1997) (“Only the circuit court within the county where he is incarcerated has jurisdiction.”); see also § 79.09, Fla. Stat. (2011) *253 (“Before a circuit judge the [habeas] petition and the papers shall be filed with the clerk of the circuit court of the county in which the prisoner is detained.”); Philip J. Padovano, Florida Appellate Practice § 30:6, at 756 (2011 ed.) (“A circuit court judge in one circuit may not issue a writ of habeas corpus to order the release of a party detained in another.”). But in Murray, this Court also recognized the complementary principle that the right to habeas relief “should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality.” 872 So.2d at 221 (quoting Haag, 591 So.2d at 616).
Therefore, I agree with the Second District that the “circuit court in DeSoto County should not be expected, and presumably lacks the power, to regulate or issue orders to other circuit courts throughout the State concerning petitions pending in those other circuits.” In re Commitment of Morel, 67 So.3d at 1064. The facts of the present case clearly demonstrate that matters relating to the failure of a trial to progress can be more easily resolved in the circuit court where the detained individual’s commitment trial is pending. I would thus recede from Murray to the extent it precludes the circuit court in which an individual’s commitment trial is pending from resolving habe-as petitions that raise claims of inordinate pretrial delay.
My second concern in this case relates to whether this Court and Florida’s circuit courts have instituted adequate procedures to safeguard against the risk of excessive delay in bringing a Jimmy Ryce respondent to trial. By any measure, Morel’s nearly ten-year delay in going to trial is unreasonable and implicates the rights guaranteed to every individual under the Due Process Clause. Although the testimony offered at the evidentiary hearing conclusively established that after Morel waived his right to have a trial within thirty days, he purposely sought to thwart the timely resolution of his commitment proceeding, I am still troubled by the State Attorney’s and trial court’s apparent assent to this delay for such a prolonged period of time.
When discussing a criminal defendant’s Sixth Amendment right to a speedy trial, the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), observed that “the primary burden [is] on the courts and the prosecutors to assure that cases are brought to trial.” I see no reason why this principle should apply with any less force to the civil commitment process of alleged sexually violent predators. Civil detainees retain greater liberty protections than individuals detained under the criminal process, see Youngberg v. Romeo, 457 U.S. 307, 321-24, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and criminal defendants detained pretrial retain greater liberty protections than convicted ones, see Bell v. Wolfish, 441 U.S. 520, 535-36, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). It therefore “stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.” Jones v. Blanas, 393 F.3d 918, 932 (9th Cir.2004). Just as we would not condone the delay of a criminal trial for nearly ten years, absent extraordinary circumstances, we should not tolerate a similar delay in the civil commitment of an alleged sexually violent predator who has already served his or her criminal sentence.
I agree with the majority that a proper construction of rules 4.240 and 4.260 of the *254 Jimmy Ryce Rules of Procedure do not permit a trial court to authorize the indefinite pretrial detention of a Jimmy Ryce respondent, even where a respondent consents to the delay either through seeking a continuance or entering a waiver. These rules, however, do not relieve the State, which prosecutes Jimmy Ryce cases, or Florida’s circuit courts, which oversee such cases, of their respective duties to ensure that these matters be resolved efficiently and expeditiously, notwithstanding a respondent’s conscious decision to delay the process.
Even after a waiver is entered, both the Act and the Jimmy Ryce Rules of Procedure require that in order for the original trial date to be continued beyond 120 days, the trial court must find that a manifest injustice would otherwise occur. See § 894.916(2), Fla. Stat. (2011); Fla. R. Civ. Pro. Inv. Comm, of Sexually Violent Pred. 4.260. Where a party requests that such a continuance be granted, I would urge the circuit court to at that point conduct a case management conference. If, after the conference, the court determines that the circumstances of the case warrant a finding of manifest injustice, I would further urge the court to then place the case on the docket every thirty days to conduct a status hearing in order to monitor its progression.
To be sure, other methods for facilitating the timely resolution of Jimmy Ryce cases exist as well. For example, the record in this case reflects that in response to this Court’s January 2011 order of relinquishment, on February 3, 2011, Judge Jack Tuter conducted a status hearing to examine the status of the Jimmy Ryce cases currently pending in the Seventeenth Judicial Circuit Court. During this hearing, Judge Tuter, an assistant state attorney, and an assistant public defender were present to discuss the status of thirteen pending Jimmy Ryce cases. After being apprised of the status of each of these cases, Judge Tuter devised a plan to hold a similar status hearing approximately every eight weeks.
The above procedures demonstrate the ease with which circuit courts can facilitate the timely resolution of these types of cases while, at the same time, tempering the risk of due process violations. Therefore, I would recommend that all of Florida’s circuit courts begin to implement similar procedures. While a respondent’s initial waiver of the thirty-day time limit may be beneficial, in that the respondent and his or her counsel may need more than just thirty days to prepare an adequate defense, courts simply cannot allow this kind of waiver to become a subterfuge for indefinite pretrial delay.
In this case, I fully agree with the majority’s conclusion that as a noncommitted detainee, Morel is not entitled to the treatment he seeks and that as the chief proponent of the pretrial delay he experienced, his right to due process has not been violated. Nevertheless, my concerns regarding the effect of this Court’s decision in Murray and whether circuit courts have put in place procedures to minimize the risk of inordinate pretrial delay remain.
PERRY, J., concurs.